James C. EBERLY, Petitioner Below, Appellant,

v.

Alice P. EBERLY, Respondent Below, Appellee.

Supreme Court of Delaware.

Submitted: June 4, 1984.

Decided: Jan. 25, 1985.

Marie C. Bifferato, Howard M. Berg & Associates, P.A., Wilmington, for appellant.

David Clayton Carrad, Wilmington, for appellee.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

HERRMANN, Chief Justice:

The husband appeals from certain orders of the Family Court related to the parties' divorce, including awards of interim and final alimony; a division of property; an award of attorney's fees; and an order permitting the intervention of a third-party creditor in the proceedings. Moreover, we address certain tactics used by the wife's counsel in this case.

We conclude that it was an abuse of discretion and a denial of the husband's due process rights to have awarded extended interim alimony to the wife without any evidentiary hearing; and, that in several substantial respects, the findings of the Family Court regarding post divorce ancillary matters were neither supported by the record, nor the product of an orderly and logical deductive process.

We reverse and remand for further proceedings consistent herewith, and direct that the matter be reassigned to a different Trial Judge. We also direct the imposition of certain sanctions against the wife's counsel, and refer certain other matters to the Board on Professional Responsibility for investigation and such further action as may be appropriate.

I.

In view of their significance, we set forth the facts in considerable detail: The parties were married July 5, 1962 and separated in July of 1981. On August 8, 1981, the wife filed a sworn petition for divorce in the Family Court of the State of Delaware in

and for Sussex County, alleging *inter alia* that the marriage was irretrievably broken because of incompatibility.[1] At that time she was represented by other counsel. On August 20, 1981, the husband answered under oath admitting incompatibility, and counterclaimed for divorce on the same ground. Thereafter, the wife retained her present counsel and, on October 1, 1981, she filed a motion for emergency interim relief, requesting *inter alia* that the husband pay interim alimony, her attorney's fees and expert witness fees. The wife also requested that the case be transferred from Sussex County to New Castle County.

The wife's affidavit filed in support of her motion estimated that her husband's available monthly income from his law practice as a sole practitioner in Sussex County was between $5,400 and $6,400. This conjectural statement was based upon an assertion in Altman & Weil, *How to Manage Your Law Office*, §§ 11, 12 at 11–12 (1981 ed.), that "the average [law] office spends 40% of its gross income on overhead." There was no factual statement regarding the husband's actual overhead.[2] The wife claimed to require $4,500 alimony per month, leaving only $1,500 per month for the husband's living expenses. In arriving at her estimate of the husband's income, the wife did not take into account the husband's medical condition, including ulcerative colitis, for which he was hospitalized at the time.

In response to the wife's motion and affidavit, the husband's lawyer wrote to the Family Court Judge in Sussex County, to whom the wife had sent a copy of her motion for interim relief, explaining that her client was seriously ill and was presently in the hospital. The husband's counsel

---

1. Delaware's "no fault" divorce law, 13 *Del.C.* § 1505, provides in pertinent part:

 (a) The Court shall enter a decree of divorce whenever it finds that the marriage is irretrievably broken and that reconciliation is improbable.
 (b) A marriage is irretrievably broken where it is characterized by:
 * * * * * *
 (4) Separation caused by incompatibility.

2. This affidavit contained numerous other statements which were improper, inadmissible, or irrelevant as a basis for interim relief. Examples include:

 (a) Conjecture and conclusory argument:
 "6. On information and belief, (husband) is trying to hold down the gross income of his practice ... I believe he has deliberately ... [made] his financial picture appear more grim that (sic.) it actually is ..."
 (b) Hearsay, testimony and legal argument of wife's counsel:
 "8. ... [m]y attorney has advised me that any alimony payment ... would be fully taxable to me, and he has further advised me that I will need $4,500 per month in order to meet my expenses ... My attorney has further advised me that because this entire amount will be fully tax-deductible to my husband, he can expect to have a rock-bottom minimum of $1,500, and perhaps more, available for his own living expenses, a more than ample amount."
 "13. ... Mr. Carrad has advised me that *my case is likely to be complex* ... In addition he has advised me that my husband's law practice is 'marital property' ... Mr. Carrad has advised me that it is possible my husband's law degree and license to practice law within the meaning of 13 *Del.C.* § 1513, based on several decisions from other states ... Mr. Carrad has advised me that this issue has not previously been litigated in Delaware and that ... his task will be made more difficult than in the usual case."
 "14. Mr. Carrad charges $100.00 per hour which he has advised me is not unusual ..."
 "17. ... Mr. Carrad has advised me that the Family Court is a court of statewide jurisdiction as set forth in 10 *Del.C.* § 902(a), and that this Court has specific authority to 'transfer for good cause ...'"
 "19. Mr. Carrad has advised me that he sought an extension of time within which to file a response to the Counterclaim from my husband's attorney ..., but that [she] has declined to extend him that courtesy. Mr. Carrad has further advised me that he believes the reason [opposing counsel] has refused to extend the time for a responsive pleading is that my husband intends to pursue this Counterclaim as soon as possible in order to make sure that the divorce is granted after 19½ years of marriage instead of 20 years."
 (c) Self-serving irrelevancies:
 "11. ... in the event of my husband's premature death, I would devote a large part of the proceeds of this life insurance to putting our son, who just started his freshman year at the University of Delaware, through college and medical school."

requested an extension of time in which to answer the motion; and contending that there was no legitimate emergency facing the wife, she opposed consideration of the motion for interim relief.

On October 13, less than two weeks after the wife had filed her motion for emergency interim relief, her lawyer again wrote to the Sussex County Judge requesting that the Court move more quickly on the matter. The wife's lawyer sent a copy of the letter to a certain Family Court Judge in New Castle County. The husband's lawyer responded by writing to the New Castle County Judge to clarify some of the charges which the wife's counsel was making.

On October 26, 1981, the New Castle County Family Court Judge (hereinafter "Trial Judge") had the case transferred to New Castle County, and ruled upon the wife's motion for interim relief. This action was taken without any hearing, notice to the husband's counsel, or explanation. Relying solely on the wife's affidavit and a "teleconference" with both lawyers, the wife was awarded $2,500 per month as "interim alimony" until further order of the Court, as well as $1,000 toward her counsel fees, costs and expert witnesses. The Order also directed the husband to keep current certain insurance policies, and granted the wife an extension of time in which to answer the husband's counterclaim. No evidentiary hearing of any kind preceded the Order.

The October 26 Order instructed the husband to make his first $2,500 interim alimony payment on November 1. He failed to do so; the next day, the wife's lawyer sought to have the husband held in contempt. On November 6, 1981, the husband sent his wife a check for $600 explaining that because of his recent hospitalization this amount was all that he had available. The husband also listed over $1,482 of expenses, that had appeared in his wife's affidavit requesting interim alimony, which he had already paid for the month of November. As a sole practitioner, the husband's cash flow problems eventually improved, and he paid the monthly alimony in full, but not before the wife's attorney filed a second motion for contempt in the latter half of November. Later, when the February 1, 1982 alimony payment was late, the wife's lawyer again moved on February 5, to have the husband held in contempt. He renewed this motion with a demand for an "emergency" finding of contempt three days later. The husband marshalled enough resources to make the payment on February 18, but the wife's counsel still demanded that the husband be held in contempt.

Meanwhile, the husband's efforts to obtain a hearing concerning the amount of interim alimony yielded nothing. Three days after the October 26, 1981 Order, the husband's counsel moved to stay that Order and obtain an evidentiary hearing. By the time the Trial Judge considered the Motion to Stay, the wife's first Motion for Contempt was also before the Court. Oral argument on both motions and other matters was held on November 19. No evidence was admitted; and the Court denied the husband's motion for a stay as well as his motion for an evidentiary hearing to determine proper interim relief. The Court formalized this denial in a letter on December 1.

In the meantime, on November 13, 1981, despite her sworn petition for divorce alleging incompatibility, the wife answered the husband's counterclaim for divorce on the same ground by denying any incompatibility. The wife swore to this allegation under oath, and her lawyer signed the response both as counsel and as a notary to the oath. Having failed to obtain an alimony hearing, the husband then tried to move toward a final resolution of the entire matter by informing the Trial Judge on December 1 that he would be ready for trial on the petition for divorce at the Court's earliest convenience. This request was met with inaction for about six weeks, even though it was renewed on December 18 with the request that, if the Court would not hear

the wife's petition for an uncontested divorce, then alternatively, that it hear the husband's counterclaim. In early December, 1981, the husband again filed a motion to modify the October 26, 1981 Order. The Trial Judge responded by letter on December 16, saying:

I have before me the latest motion filed in the above case. Petitioner [husband] seeks relief from the interim order entered herein [sic] on October 26, 1981. The motion is denied.

In the interest [sic] of both parties I would suggest, as I have suggested before, that this action not be characterized by a continuing parade of motions for interim relief. I have already ruled on the matters which are covered by the latest motion. I do not intent [sic] to rule again.

As of December 16, 1981, the only motions relating to interim relief which the Court heard were the wife's initial motion, which was granted on October 26, 1981, and the husband's motion for a stay or for a hearing which was summarily denied on November 19, 1981.

The husband, still seeking a day in court over the open-ended $2,500 per month alimony order, sought leave of the Trial Judge to appeal the issue to this Court. In an Order of December 23, 1981, the Trial Judge refused to certify the appeal, and it was subsequently denied.

In mid-January 1982, the case was scheduled for hearing as an uncontested divorce, at which point the wife's contradictory sworn pleadings became significant. Her sworn petition for divorce, filed on August 8, 1981, alleged in pertinent part:

"6. The marriage of Petitioner and Respondent is irretrievably broken in that it is characterized by incompatibility. Reconciliation is improbable."

The husband's sworn answer of August 20, 1981, admitted this allegation, and his counterclaim also alleged:

"8. That the marriage is irretrievably broken because of incompatibility of the parties and reconciliation is improbable."

However, even though no circumstances had changed in the parties' relationship, by sworn affidavit of November 13, 1981, signed also by her present counsel, the wife responded to the husband's counterclaim, saying that she:

"8. Denied each and every allegation of paragraph 8 of the counterclaim."

The wife sought neither to amend nor dismiss her own sworn petition for divorce, which directly contradicted her later sworn reply to the counterclaim. Instead, her lawyer, ignoring both his own client's petition and the husband's answer, wrote to the Court, stating that matter was "contested" and must be heard as such. The Trial Judge heeded this request and agreed to set a date on which to hear the husband's counterclaim on a contested basis. After the husband obtained a trial date of March 11, the wife then moved for a stay, asserting that her then-current Motion for Contempt must be heard first.

On March 11, 1982, based on the husband's counterclaim, the parties were granted a divorce. A hearing was subsequently held, on May 31, 1983 (over nineteen months after the original interim alimony award was made) on the ancillary matters concerning the division of marital property, final alimony, and attorney's fees. The Trial Court set forth its rulings in a letter opinion dated August 31, 1983: Marital property was divided 56%—44% between the wife and husband respectively; the husband was required to pay 56% of the wife's attorney's fees; alimony payments of $2,500 per month were continued for the maximum time permitted by the Statute, i.e., two years; both husband and wife were ordered to repay $10,000 loaned to them by the wife's mother, who had been permitted to intervene in the proceedings as a third-party creditor.

## II.

The Family Court's responsibility in divorce cases is to "provide litigants with a forum in which emotionally charged issues

... [can] be resolved under the least disruptive and most efficacious conditions." *Bruce E.M. v. Dorothea A.M.*, Del.Supr., 455 A.2d 866, 873 n. 10 (1983).[3] The legislative mandate in the Delaware Divorce and Annulment Act, 13 *Del.C.* § 1501, et seq., is no less clear and direct in its similar requirement:

§ 1502. Purpose; construction.

This chapter shall be liberally construed and applied to promote its underlying purposes, which are:

(1) To promote the amicable settlement of disputes that have arisen between the parties to a marriage;

(2) To mitigate the potential harm to spouses and their children caused by the process of legal dissolution of marriage;

(3) To make the law of divorce more effective for dealing with the realities of matrimonial experience by making irretrievable breakdown of the marriage relationship the sole basis for divorce;

(4) To permit dissolution of a marriage where the marriage is irretrievably broken despite the objections of an unwilling spouse;

(5) To award alimony under this chapter to a dependent party but only during the continuance of such dependency;

(6) To award alimony in appropriate cases so as to encourage parties to become self-supporting;

## A.

The husband challenges the Trial Court's October 26, 1981 grant of "interim alimony," of unlimited duration without any evidentiary hearing, as a clear abuse of discretion and a denial of the husband's constitutionally protected right to due process. U.S. Const. amend. XIV, § 1; *Del. Const.* art. I, §§ 7, 9.[4] It is basic to our system of law that both of these constitutional provisions establish as a fundamental requirement of due process that a party be afforded notice and an opportunity to be heard before judgment. *Perrine v. Pennroad Corp.*, Del.Supr., 47 A.2d 479 (1946), *aff'd sub nom. Swacker v. Pennroad Corp.*, Del.Supr., 57 A.2d 63 (1947); *Spoturno v. Woods*, Del.Supr., 192 A. 689 (1937); *Cantor v. Sachs*, Del.Ch., 162 A. 73 (1932).

As has been noted: Based solely on a seriously defective affidavit filed by the wife and on a "teleconference" with the parties' attorneys, the Family Court ordered the husband to pay "interim alimony" of $2,500 per month. The wife's mo-

---

**3.** *See also Ruggles v. Riggs*, Del.Supr., 477 A.2d 697 (1984); *Joseph B.P. v. Kathleen M.P.*, Del. Supr., 469 A.2d 800 (1983); *Adelaide A.G. v. Peter W.G.*, Del.Supr., 458 A.2d 702 (1983); *Frank G.W. v. Carol M.W.*, Del.Supr., 457 A.2d 715 (1983); *E.E.C. v. E.J.C.*, Del.Supr., 457 A.2d 688 (1983); *William H.L. v. Virginia L.L.*, Del. Supr., 457 A.2d 327 (1983); *Walter S.J. v. Lorraine J.*, Del.Supr., 457 A.2d 319 (1983); *Ann Marie H. v. Joseph J.H.*, Del.Supr., 456 A.2d 1233 (1983); *Abdel G.S. v. Badrban H.K.*, Del.Supr., 453 A.2d 94 (1982).

**4.** The due process provisions of the Delaware Constitution provide:

Art. I, § 7. Procedural rights in criminal prosecutions; jury trial; self-incrimination; deprivation of life, liberty or property.

In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel, to be plainly and fully informed of the nature and cause of the accusation against him, to meet the witnesses in their examina-

tion face to face, to have compulsory process in due time, on application by himself, his friends or counsel, for obtaining witnesses in his favor, and a speedy and public trial by an impartial jury; he shall not be compelled to give evidence against himself, nor shall he be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land.

Art. I, § 9. Courts shall open; remedy for injury; suits against State.

All courts shall be open; and every man for an injury done him in his reputation, person movable or immovable possessions, shall have remedy by the due course of law; and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. Suits may be brought against the State, according to such regulations as shall be made by law.

tion was filed and the Trial Judge's order was entered while the husband was hospitalized for a serious illness. Oral argument was held on various motions filed by the parties, including the husband's emergency Motion to Stay the Interim Order, and his request for a hearing to determine proper interim relief. Once again, no testimony was permitted on this occasion.

Thus, the Trial Judge denied an evidentiary hearing on the matter of interim alimony, despite the fact that the Trial Judge then had before him an affidavit of the husband, which included several assertions challenging those made by the wife in her affidavit upon which the Court had originally relied in granting the interim relief.

In so doing, the Trial Judge apparently relied upon Family Court Rule 140(e).

That Rule provides: "Only in exceptional circumstances will oral testimony be permitted on applications or motions for *emergency* or other relief." (Emphasis added.) But the Court misinterpreted Rule 140(e), when it read that section out of context with the entire Rule,[5] and without concern for the constitutional due process guarantees of U.S. Const. amend. XIV, § 1 and *Del. Const.* art. I, §§ 7, 9 (*see supra* note 4) which the General Assembly further recognized in 13 *Del.C.* §§ 1509 and 1512, regarding the award of interim alimony.[6] To pass constitutional muster, Rule 140(e) cannot be read to preclude testimony

---

**5.** F.C.R. 140 states in relevant part:

(a) In General. Following the filing of a petition or information, the Court may enter an emergency or other interim order upon motion or request of any party or upon the Court's own motion, after notice to all parties, as justice may require. *Such orders may be entered without the requisite notice to all parties where emergency circumstances dictate the necessity for immediate action; but in that event any party who was not given notice shall be afforded an opportunity to be heard as soon as practicable.*

\* \* \* \* \* \*

(c) Emergency Orders. Unless otherwise ordered, applications or motions for emergency relief shall be considered by the Court in chambers and without the presence of the parties or their counsel, on affidavits or verified pleadings. The application must be accompanied by an affidavit of the moving party or his counsel setting forth (1) the nature of the controversy, (2) the relief sought, (3) facts upon which the Court may conclude that unless the relief sought is granted prior to hearing on the merits, substantial and irreparable harm will result. *If the Court concludes that a true emergency exists, a hearing shall be scheduled forthwith. Otherwise, a hearing shall be scheduled under paragraph (d) hereof.*
(d) Other Interim Relief. Applications for interim relief not of an emergency nature shall also be heard by the Court on affidavits or verified pleadings, *and shall be scheduled by the Court in the usual course at a time convenient for the Court and the parties.*
(e) Oral Testimony. Only in exceptional circumstances will oral testimony be permitted on applications or motions for emergency or other interim relief. (Emphasis added.)

**6.** These Statutes provide in pertinent part:

§ 1509. Preliminary injunction; interim orders pending final hearing.
... (b) Petitioner in the petition for divorce or annulment, or by motion filed simultaneously with the petition, or either party by motion filed after the filing of the petition, may move for 1 or more of the following interim orders:
(1) For temporary alimony for himself or herself;

\* \* \* \* \* \*

(c) A motion shall be accompanied by an affidavit setting forth the factual basis for the motion and any amounts of money requested. The Court may issue any of the above orders solely or collectively without requiring notice to the other party only if it finds on the basis of the moving affidavit or other evidence that irreparable injury would result to the moving party if an order were not issued until the time for responding has elapsed.
§ 1512. Alimony in divorce and annulment actions; waiver or release.
(a) The Court may grant alimony for a dependent party as follows:
(1) Temporary alimony for either party during the pendency of an action for divorce or annulment;
(2) Alimony for a respondent commencing after the entry of a decree dissolving an irretrievably broken marriage characterized by mental illness; or
(3) Alimony for a petitioner, or for a respondent who does not qualify for alimony under paragraph (2) of this subsection, commencing after the entry of a decree of divorce or annulment but not to continue for more than 2 years after marriage dissolution unless the parties were married for more than 20 years.

in all instances, but only where a genuine emergency exists. Otherwise, property rights are affected for extended periods of time, perhaps even permanently, without the underpinning of adequate notice, hearing, or evidence sufficient to meet the demands of due process.

The Family Court has the authority to grant temporary alimony during the pendency of a divorce action under 13 *Del.C.* § 1509(b)(1) and 13 *Del.C.* § 1512(a)(1). 13 *Del.C.* § 1509(c) provides that a motion for such interim relief must be supported by an affidavit and that notice must be given to the non-moving party, unless the Court finds that the movant would suffer irreparable injury if the order for alimony were not issued until the time for responding had elapsed. *Id.* Seven factors which the Court must consider in setting the amount of interim alimony are listed in 13 *Del.C.* § 1512(c).[7] Except in a genuine emergency, and until a proper hearing can be convened, Family Court Rule 140 is invalid unless it gives full effect to the due process implications of U.S. Const. amend. XIV, § 1; *Del. Const.* art. I, §§ 7, 9; and 13 *Del.C.* §§ 1509, 1512.

■ It is true that, when denying the husband's motion for a stay of the interim order, the Family Court had before it his affidavit; however, conflicting affidavits are not sufficient to meet the due process requirement of "action in conformity with the general law, based upon evidence, and after a full hearing upon notice to the party or parties affected and [with] an opportunity to be heard," *Aprile v. State*, Del.Super., 143 A.2d 739, 744 (1958), unless a temporary emergency exists.

■ Manifestly, the factors listed in 13 *Del.C.* § 1512(c), which must be considered in awarding alimony, could not have been adequately addressed solely on the affidavits filed herein.

■ Moreover, these due process violations are underscored by the fact that the interim alimony order continued over a period of one year and ten months without having subjected the wife's evidence to the scrutiny of cross examination, and without otherwise requiring it to conform to the Rules of Evidence. Even if the Court had issued the interim alimony order on a genuine emergency basis, and was acting within the ambit of its discretion in relying solely on the wife's improper affidavit, it was clearly an abuse of discretion and a denial of husband's due process rights to allow the interim award to remain in effect for twenty-two months without any evidentiary hearing.

In summary, we recognize that the Family Court has discretion under 13 *Del.C.* § 1509 to grant interim alimony, based solely on an affidavit of the moving party, but only when it finds that a genuine emergency exists necessitating such prompt action.[8] In any event, it is essential that the affidavit conform to the Rules of Evidence; moreover, due process requires that a hearing be held as soon as possible. To permit

7. 13 *Del.C.* § 1512(c) provides:

The alimony order shall be in such amounts and for such time, except as limited in time under subsection (a) of this section, as the Court shall deem just without regard to marital misconduct and after considering all relevant factors justified by the evidence, including:

(1) Financial resources of the party seeking alimony including marital property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with such party includes a sum for that party as custodian;

(2) Time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;

(3) Standard of living established during the marriage;

(4) Duration of the marriage;

(5) Age, and the physical and emotional condition of the party seeking alimony;

(6) Ability of the other party to meet his or her needs while meeting those of the party seeking alimony; and

(7) Tax consequences.

8. We note that in this case no apparent emergency existed, particularly given the fact that husband was in the hospital and unable to respond to the wife's motion.

an interim alimony award to stand for twenty-two months on the basis of the wife's improper affidavit alone, without an evidentiary hearing, was a clear abuse of discretion and denial of due process.

This conclusion shall be accorded due consideration and weight upon the remand of this case for further proceedings consistent herewith.

### B.

■ The husband next challenges the Trial Court's August 31, 1983 award of ancillary relief. In that regard, 13 *Del.C.* § 1513[9] governs the division of marital property; and 13 *Del.C.* § 1512 governs the award of alimony after a divorce decree has been entered. (*See supra* note 7.) In reviewing the Family Court's alimony award and division of marital property, its interpretation and application of this Statute are matters of law subject to review by this Court in light of the entire record. *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, Del.Supr., 402 A.2d 1202, 1204 (1979). This Court also reviews the Trial Court's factual findings and its inferences and deductions, although they stand unless they are clearly

wrong and justice requires reversal. *Id.; Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972).

■ On this record, it is clear that the Trial Judge did not adequately focus on the specific factors enumerated in 13 *Del.C.* §§ 1512 and 1513. Furthermore, many of the Court's factual findings, inferences, and deductions are not supported by the record and, therefore, cannot be the product of an orderly and logical deductive process.

Specifically, we note the Trial Court's statement that it would consider, as a factor to be weighed in effecting an equitable division of property between the parties, the interim alimony payments the husband had made; but, there is nothing in the Court's opinion to indicate that it did so. Certainly, the Court should have considered the portion of the interim alimony payments that went to preserving marital property; but again, there is no indication of that having been done.

The Court also concluded that the wife was "living in a much lower standard of

---

**9.** 13 *Del.C.* § 1513 provides in pertinent part:

(a) In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:

(1) The length of the marriage;

(2) Any prior marriage of the party;

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;

(4) Whether the property award is in lieu of or in addition to alimony;

(5) The opportunity of each for future acquisitions of capital assets and income;

(6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker or husband;

(7) The value of the property set apart to each party;

(8) The economic circumstances of each party at the time the division of property is to become effective, including the desirability of

awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live;

(9) Whether the property was acquired by gift, bequest, devise or descent;

(10) The debts of the parties; and

(11) Tax consequences.

(b) For purposes of this chapter only, "marital property" means all property acquired by either party subsequent to the marriage except:

(1) Property acquired in exchange for property acquired prior to the marriage;

(2) Property excluded by valid agreement of the parties; and

(3) The increase in value of property acquired prior to the marriage.

(c) All property acquired by either party subsequent to the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in paragraphs (1) through (3) of subsection (b) of this section.

\* \* \* \* \* \*

living than was established during the marriage." The record shows that, to the contrary, the wife was living in the family's home, had possession of the family's 1981 Cadillac automobile, and was receiving from her husband alimony that amounted to $30,000 annually. Indeed, the wife has conceded that her living standard under the circumstances was higher than the husband's.

Another unsupported finding made by the Trial Judge, which also apparently affected the Court's award of rehabilitative alimony, was the conclusion that "[t]he parties are of comparable age, physical and emotional condition." However, the record is replete with evidence that the husband suffered from very serious health problems which had kept him hospitalized and unable to work during part of the time period when the interim alimony order was in effect. There is no evidence that the wife suffered from any equally serious condition.

Further, despite the husband's financial problems and ill health, the Court awarded continued alimony, summarily finding that the "husband presently has the financial resources needed to meet his and her needs." As we have noted, the interim alimony, as well as the final alimony award, was set at $30,000 per year. Even if husband had been able to withdraw $50,000 each year from his law practice as the court required, this alimony burden would have been extremely heavy. The $50,000 figure, however, was apparently drawn from the profit-and-loss statements prepared by wife's accountant, and represents a pre-tax amount. To the extent that asset valuation and the alimony award are based on a figure of $50,000 as the husband's discretionary income, they are incorrect by at least the percentage differential between $50,000 and his true net, after-tax disposable income.

Another unsupported, misleading and irrelevant statement included in the Court's opinion was that "[a]ccording to [husband's] physician ... [husband] is not to drink excessively." While this statement implies that the husband had some sort of drinking problem which contributed to his physical ailments, the only testimony in that regard was a statement by his doctor on cross-examination that, "I advise most people not to drink excessively. There's no relationship between his disease and alcohol consumption."

Also, the Court charged that the husband had cashed and "dissipated" a $10,000 certificate of deposit that was a marital asset. However, what the Court neither acknowledged, nor apparently considered, was that the husband had used the certificate of deposit to pay alimony to the wife while he was hospitalized. Finally, while the 56%—44% division of marital property between the wife and husband respectively may appear reasonable at first glance, we note that the appraisal of certain marital assets was questionable.

The foregoing shall be accorded due consideration and weight upon the remand of this case for further proceedings consistent herewith.

It is held that the Trial Court committed reversible error in its August 31, 1983 award of alimony and division of marital property.

## C.

The husband challenges the Trial Court's allowance of a third-party intervention by his mother-in-law regarding a loan of $10,000 which she allegedly made to the husband when he started his law practice. The Court erroneously held that it could (1) allow permissive intervention by such a third-party creditor under Superior Court Rule 24(b); [10] and (2) grant to the creditor a

10. Superior Court Rule 24(b) provides:
 Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to inter-

vene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the Court shall consider whether

judgment enforceable in some other "appropriate court".[11]

Presumably, this error stems from a misperception of the procedural rights granted litigants in the Family Court pursuant to 13 *Del.C.* § 1522(a).[12] By its terms, this Statute is not a grant of jurisdiction to the Family Court; rather, within the ambit of the Family Court's jurisdiction, it requires that those persons over whom the Court may assert jurisdiction must be accorded the same procedural rights as they would have in the Superior Court. It is clear from the statutory grant of jurisdiction in 13 *Del.C.* § 1513(a), regarding divorce or annulment proceedings, that the Family Court may assert jurisdiction only over the parties to such proceedings, i.e., the husband and wife,[13] including their property, and issues related to the care, custody and support of their children.

Therefore, the provisions of 13 *Del.C.* § 1522 may not be read to expand the substantive jurisdiction of the Family Court to include all controversies which a divorce might provoke, including the grant of judgments to third parties. If that were true, then any controversy involving matters such as trusts, wills, estates, and corporate issues, would be subject to the Family Court's jurisdiction if it arose in the context of a divorce or annulment proceeding. The specialized nature of the Family Court's jurisdiction, as set forth in 10 *Del.C.* § 902,[14] further compels this conclusion.

Indeed, an even more fundamental basis for this rule exists in the instant case. A claim of the type which the third party here asserts is one within the common law jurisdiction of the Superior Court with an absolute right to trial by jury, as granted by art. I, § 4 of the Delaware Constitution.[15] Depriving any claimant to the property in question of that right, unless waived, would be a direct violation of the constitutional guarantee. *In re Markel*, Del.Supr., 254 A.2d 236, 239 (1969).

Certainly, on the slim thread of 13 *Del.C.* § 1522, it cannot be said that such a pervasive shift in the jurisdiction of the Superior Court or the Court of Chancery has occurred. This Court has hereto-

the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

11. Specifically, the Order of the Court stated:
"6. Husband and wife are jointly and severally liable to Helen V. Huber for the $10,000 loan granted to the parties in connection with the opening of husband's law practice in May, 1980, which obligation may be enforced in the appropriate court but not in this court."

12. This Statute provides in pertinent part:
§ 1522. Procedural rights.
(a) All parties to any of the proceedings brought pursuant to this chapter shall possess all the procedural rights which those parties would have heretofore possessed in any of the proceedings brought pursuant to this chapter in the Superior Court of this State including but not limited to the following:
\* \* \* \* \* \*

13. 13 *Del.C.* § 1513(a) provides, in relevant part, that:
In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property *between the parties* without regard to marital misconduct, in such propor-

tions as the Court deems just after considering all relevant factors ... (Emphasis added.)

14. 10 *Del.C.* § 902 provides:
(a) In the firm belief that compliance with the law by the individual and preservation of the family as a unit are fundamental to the maintenance of a stable, democratic society, the General Assembly intends by enactment of this chapter that 1 court shall have original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein. The court shall endeavor to provide for each person coming under its jurisdiction such control, care, and treatment as will best serve the interests of the public, the family, and the offender, to the end that the home will, if possible, remain unbroken and the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.
(b) This chapter shall be liberally construed that these purposes may be realized.

15. This section of the Delaware Constitution provides in pertinent part:
"Trial by jury shall be as heretofore ..." *Del. Const.*, art. I, § 4.

fore made it clear that, given the nature of the Family Court's limited jurisdiction in divorce proceedings, it may adjudicate only rights and claims arising between a husband and wife. "Alleged claims of third-party creditors have no place in the Family Court, and the intervention of such creditors is wholly improper. The Family Court is a tribunal of limited statutory jurisdiction. It has no power to hear or determine claims of third parties against a husband and wife or their property." *Joseph B.P. v. Kathleen M.P.*, 469 A.2d at 802. The wife argues that the Supreme Court had not specifically addressed the third-party creditor intervention issue at the time the Family Court permitted the third party to intervene in this action. We find no merit in this contention. The Family Court's jurisdiction has always been limited statutorily. *Joseph B.P. v. Kathleen M.P.*, *supra.* There is nothing new or unique in this concept. It is a principle of long standing that even the statutory jurisdiction of the Superior Court is "special, limited and summary," as to matters beyond its common law powers. *Stidham v. Brooks*, Del. Supr., 5 A.2d 522, 524 (1939). As is apparent, this principle is based, not upon the question of whether a court has been created by constitution or statute, but rather it depends entirely on the nature and scope of the court's jurisdiction. Considering the basic intent of the Family Court's specialized role, the adjudication of third-party rights is clearly not within the jurisdiction vested in that Court.

The Trial Court's reliance on *Husband T.N.S. v. Wife A.M.S.*, Del.Supr., 407 A.2d 1045 (1979), as authority for permitting the wife's mother to intervene as a third-party creditor in this case, was misplaced. In the cited case, this Court held that the only exception to the rule against third-party intervention in a case of this kind arises when a third party's due process rights might be infringed by the order of the Family Court. There, an order of the Family Court would have infringed upon the third party's due process rights because the third party was a joint titleholder of the

deceased husband's property, as well as the executrix of his estate. No similar due process concern emerges here. The mother-in-law faced no danger of having her legal rights impaired by the order of the Family Court.

■ Accordingly, we hold that the Trial Court erred in (1) permitting the intervention of the wife's mother as a party in this case; and (2) granting a judgment in favor of the mother-in-law enforceable in another court.

### III.

A serious matter in this case which may not be permitted to go unnoticed is the manner in which the case was transferred from one County to another. As has been noted, on October 1, 1981, the wife filed her motion for interim relief in Sussex County. She requested interim alimony and assignment of the case to a judge of the Family Court sitting in New Castle County. In her accompanying affidavit she requested the transfer because her husband was a practicing attorney in Sussex County. At the time her motion was filed, the husband was seriously ill and hospitalized, and his counsel requested an extension of time within which to answer the motion. On October 13, 1981, the wife's attorney sent a letter to the Sussex County Judge requesting an early hearing or teleconference. A copy of the letter was sent to the Trial Judge sitting in New Castle County. This letter constituted the first notice to the husband's attorney that a Judge in New Castle County would be involved in the case. Without receiving an affidavit or other communication from the husband, who, as a result of his hospitalization, was not able to speak with his attorney, the Trial Judge nevertheless proceeded in the case and granted the interim relief prayed.

■ This occurred without due notice to the husband, and without giving him an opportunity to be heard in accordance with fundamental due process guarantees.

Such action constituted an abuse of discretion.

### IV.

Finally, we address the conduct and procedural tactics of the wife's counsel.

### A.

As earlier noted, the wife's counsel filed three motions to hold the husband in contempt for failure to pay alimony on time, despite the fact that the husband was hospitalized during part of the period in question, and had explained to the Court the good faith efforts he was making to meet his obligations. Without there being any evidence of bad faith or malingering on the part of the husband, there were repeated invocations of contempt proceedings for no other apparent purpose than to unduly coerce and harass the husband and to take unfair advantage of the physical and financial predicaments then confronting him.

The use of the contempt remedy by the wife's attorney in this case is illustrated:

(1) by the fact that he applied for a contempt order the day after the first monthly payment of interim alimony was due;

(2) by the fact that he applied for a contempt order within five days after the fourth monthly payment was due and renewed it with a demand for an "emergency" finding of contempt three days later;

(3) by the fact that he pressed for a contempt order even after the husband managed to make the monthly payment in full by the eighteenth of the month; and

(4) by the fact that, in a letter to the Trial Judge written immediately after the wife received the balance of that payment, the wife's attorney wrote: "I certainly do not accept ... [the husband's attorney's] argument that partial and late payments constitute full compliance with an order of this Court and thus purge ... [the husband] of any contempt."

■ We refer the contempt proceeding tactics of the wife's attorney in this case to the Board on Professional Responsibility for such further investigation and action as may be deemed appropriate.[16]

### B.

Again, we are confronted with conduct of the wife's counsel similar to that for which this Court had previous occasion to criticize him—the filing of patently contradictory affidavits in a divorce proceeding. *See Bruce E.M. v. Dorothea A.M.*, 455 A.2d 866.[17] Here, faced with the wife's sworn petition alleging an irretrievable breakdown of the marriage, the husband admitted the same and counterclaimed for divorce on the same ground. To this the wife then responded with a sworn statement denying that the marriage was irretrievably broken. It appears that this was a false averment interposed for delay. At oral argument the wife's counsel admitted that he had advised his client to make the contradictory sworn statement in an effort to have her avoid the effect of 13 *Del.C.* § 1512(a)(1) which limits alimony to two years if a marriage lasts less than twenty years.[18] At the time wife filed her petition

---

16. In this connection, *see Delaware State Bar Association v. Alexander,* Del.Supr., 386 A.2d 652, 665 (1978); *City of Wilmington v. General Teamsters Local Union 326,* Del.Supr., 321 A.2d 123, 125 (1974); *Unit, Inc. v. Kentucky Fried Chicken Corp.,* Del.Super., 304 A.2d 320, 331–332 (1973); *Smokes v. City of Wilmington,* Del.Super., 282 A.2d 634 (1971); *Harris v. State,* Del.Super., 82 A.2d 387, 388 (1951); *State v. Norris,* Del. Gen. Sess., 73 A.2d 790, 793 (1950); *Del. Const.* art. IV, § 28; 10 *Del.C.* § 940(a); 11 *Del.C.* §§ 1271, 1272; Family Court Rule 390(b); Delaware Lawyers' Code of Professional Responsibility, DR 7–102, DR 7–105.

17. While the conduct here pre-dated our decision in *Bruce E.M. v. Dorothea A.M., supra,* nothing we said there about such actions was new to our law, since what occurred, both there and here, clearly contravened well established procedural and ethical rules. *See Bruce E.M. v. Dorothea A.M.,* 455 A.2d at 870–871.

18. The following exchange occurred at oral argument:

The Court: Wasn't it throughout this your desire to avoid a divorce hearing before the twenty years had occurred?

Counsel: Yes, Sir.

for divorce the parties had been married for just over nineteen years.

Such conduct cannot be justified by claiming sanctuary in the lawyer's duty to zealously represent his client, upon which the wife's attorney here relies. It is conduct inconsistent with the lawyer's oath upon admission to our Bar, that he will act "with all good fidelity as well to the Court as to the client; [and] ... use no falsehood nor delay any person's cause through lucre or malice." Supreme Court Rule 54. Moreover, such behavior contravenes the duties of a lawyer under DR 7–102 of the Delaware Lawyers' Code of Professional Responsibility.[19]

A lawyer may not induce perjury or false swearing for any reason. It is counsel's duty in a divorce proceeding to help effectuate the Family Court's purpose of providing a forum in which emotionally

> The Court: Now, you knew that the wife had filed a petition for divorce and had sworn that the marriage was irretrievably broken? Didn't you?
> Counsel: Yes, sir.
> The Court: And on what basis—you knew that the husband had answered that under oath—you knew that was under oath, didn't you?
> Counsel: Yes, sir.
> The Court: And then the husband filed an answer admitting that it was irretrievably broken in a counterclaim, and made the same allegation, using the very same words, that 'the marriage is irretrievably broken because of incompatibility of the parties, and reconciliation is improbable'. And then you filed a pleading called a 'Response to Counterclaim', and paragraph (8) says 'Denies each and every allegation of paragraph (8) of the counterclaim'. You signed it, and your client signed it under oath.
> Counsel: Yes, sir.
> * * * * * *
> The Court: [W]hat is the basis for denying under oath something that has already been alleged under oath?
> Counsel: Your Honor, I did not prepare the divorce petition. Mrs. E.— ...
> The Court: You prepared the response [to husband's counterclaim]?
> Counsel: Yes, sir, I did.
> The Court: And you knew at the time there had been a sworn statement that [the marriage] was irretrievably broken, didn't you?
> Counsel: Yes, sir.
> The Court: Wasn't the real reason for filing [the denial] in the response to avoid the twenty-year limitation?
> Counsel: Yes, sir.
> The Court: It didn't have anything to do with the reconciliation of the parties, did it?
> Counsel: Your Honor, there were reconciliations—sporadic reconciliations.
> The Court: At the time this was filed, did it have anything to do with any reconciliation of the parties?
> Counsel: No, sir.
> The Court: So it was purely a delaying tactic, was it not?
> Counsel: Yes, sir.

> * * * * * *
> The Court: Well, I just want to be sure I understand. It was filed for purposes of delay, was it not?
> Counsel: Yes, sir.
> * * * * * *
> The Court: Thank you.

19. DR 7–102 provides:

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

(4) Knowingly use perjured testimony or false evidence.

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

(B) A lawyer who receives information clearly establishing that:

(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal.

(2) A person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal. (footnotes omitted.)

charged issues can be resolved under the least disruptive and most supportive conditions. *Bruce E.M. v. Dorothea A.M.*, 455 A.2d at 873 n. 10. An attorney who advises his client to sign a false statement, under oath for the purpose of delay, creates a breach of the public trust in the entire legal profession, and raises serious questions about his own professional ethics.

 Accordingly, we refer the foregoing situation to the Board on Professional Responsibility for such further investigation and action as may be appropriate.

### C.

 Finally, on the basis of this record, we conclude that, throughout this litigation, the tactics of the wife's attorney unreasonably and vexatiously prolonged the proceedings below and increased the cost of representation to both parties. In the light of this record, we reverse the award of attorney fees to the wife as an abuse of discretion. *Joseph B.P. v. Kathleen M.P.*, 469 A.2d at 802. To the extent that the husband has paid any of such fees, counsel for the wife shall return the same to the husband.

 In addition, we conclude that the wife's lawyer must be held personally liable for the husband's reasonable attorney's fees to the extent they were needlessly inflated by the tactics of the wife's attorney in this case, both at trial and in this appeal. The amount shall be determined and assessed as an issue on remand, and shall not be collectible from or chargeable to the wife. A court has the inherent power to assess attorney's fees against counsel when that lawyer has acted in bad faith or wilfully abused the judicial process. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *see also supra* note 16. Given the legislative mandate of 13 *Del. C.* § 1502, we consider this sanction necessary and proper to effectuate its purposes.

\* \* \* \* \* \*

REVERSED AND REMANDED for further proceedings consistent herewith, with instructions that the matter be reassigned to another Judge.