Janice and Lenus NIELSON, Appellants (Intervenors),

v.

Russell J. THOMPSON, Appellee (Plaintiff), and Karen E. Thompson, Appellee (Defendant).

No. 97–310.

Supreme Court of Wyoming.

June 17, 1999.

Clay B. Jenkins, Sheridan, Wyoming, Representing Appellants.

Hayden F. Heaphy, Jr. of Davis & Cannon, Sheridan, Wyoming, Representing Appellee Russell J. Thompson

Micheal K. Shoumaker, Westminster, Colorado, Representing Appellee Karen E. Thompson

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

Janice and Lenus Nielson (the Nielsons) assert that the district court erred in limiting their participation in the property settlement negotiations between Russell J. Thompson and Karen E. Thompson (the Thompsons) in the Thompsons' divorce proceeding. The Nielsons are judgment creditors of Russell J. Thompson, and the district court permitted them to intervene in the divorce case. Thereafter, the district court entered its Amended Order Re Intervention, in which the district court ruled that, "Nielsons should not be a party to settlement negotiations, but should be afforded an opportunity to review and offer any lawful objections to proposed settlements." We hold that the district court did not err in limiting the participation of the Nielsons in the property settlement negotiations in the Thompsons' divorce case because the Nielsons enjoyed no right to initially intervene. The only judgment in this case is the Decree of Divorce, which is affirmed

together with all interlocutory orders entered by the district court.

In the Appellants' Corrected Brief, the issue that is raised is:

### I.

Can an intervenor under W.R.C.P. Rule 24 be denied the right to participate in the case?

This Statement of the Issues is found in the Brief of Appellee Karen E. Thompson:

I. Did the district court have the right to limit the intervenors?

II. Did [the] Nielsons[ ] lose any rights to any property as a result of the court decree?

This Statement of the Issues is found in Appellee Russell J. Thompson's Brief:

1. Whether a judgment creditor of one spouse can intervene in the spouse's divorce as a matter of right under W.R.C.P. 24(a)(2) and dictate the terms of the parties' settlement agreement and the divorce decree in order to assure that the judgment debtor spouse receives assets against which the judgment creditor may execute.

2. Did the Court's Amended Order re: Intervention * * * which provided Appellants/Intervenors an opportunity to participate in all discovery, to preserve their lawful interest in any property distributed to Plaintiff/Appellee, and to review and offer lawful objection to proposed settlements, constitute a denial of due process to Intervenors/Appellants and reversible error[?]

The Nielsons are judgment creditors of Mr. Thompson by virtue of a judgment entered in Wyoming on January 8, 1986 in the amount of $14,378.50. Mrs. Thompson was not a party to that litigation and the judgment does not affect her property. The Nielsons allowed their judgment to lapse after collecting only a few hundred dollars, but on May 21, 1996, the judgment was revived by order of the district court. The amount of the judgment when it was revived with the appropriate addition for interest was $39,190.28. The prospects of collecting the judg-

---

* Chief Justice at time of expedited conference; retired November 2, 1998.

ment from Mr. Thompson were slim because he owned no assets that were not exempt from execution. He received income from a spendthrift trust established by his mother and a firefighter's pension, neither of which were available to judgment creditors. However, when Mr. Thompson filed a complaint seeking a divorce from Mrs. Thompson on September 10, 1996, the Nielsons perceived a new possibility. The Nielsons requested, and they were granted, intervention pursuant to W.R.C.P. 24(a)(2).[1] Later, the district court issued an amended order that limited the Nielsons' role as intervenors. The latter order allowed the Nielsons to review proposed settlements and offer objections, but specified they were not to be involved as a party in any settlement negotiations.

The Nielsons objected to this limitation of their rights as intervenors, claiming it restricted their ability to protect their interests. Ultimately, the Thompsons arrived at a settlement agreement, which the district court approved over the objection of the Nielsons. The settlement agreement of the Thompsons divided their considerable marital debts, personal property, and Mr. Thompson's firefighter's pension. Mr. Thompson retained the income from the spendthrift trust, and Mrs. Thompson kept real property and investments that she had inherited from her parents. Mrs. Thompson also kept rental property which she owned in her name alone as well as the marital residence in which she had previously purchased Mr. Thompson's interest for fair value. The Nielsons appeal from the Decree of Divorce asserting as error the order limiting their rights as intervenors.

The contention argued by the Nielsons is that the district court erred when it restricted the scope of their rights as intervenors and that this impaired their ability to protect their interests. We hold that no error occurred in the disposition by the district court for two reasons. The first reason is that the Nielsons had no right to intervene, and even a limited intervention was more than the law permits. The second reason is that the district court was well within its authority in limiting the scope of the intervention.

By its order, the district court allowed the Nielsons to intervene as a matter of right under W.R.C.P. 24(a)(2), which requires an intervenor to have an interest in the subject of the action. The Nielsons contend that the judgment against Mr. Thompson afforded them an interest in the subject of the divorce action because the Nielsons contend that Mr. Thompson had an interest in Mrs. Thompson's property even though he did not own property. The Nielsons rely on language in *Kane v. Kane*, 706 P.2d 676, 680 (Wyo.1985), in which we said:

> [E]ven though property is held separately by one spouse, as in this case, at the time the complaint in the divorce action is filed the other spouse acquires a co-ownership interest in that property which is not defined until the entry of the decree which articulates the property settlement.

This statement appears to support the Nielsons' contention when it is taken out of context. A more careful examination of *Kane*, on the other hand, demonstrates that the co-ownership status discussed is not as extensive as the Nielsons would prefer. What we actually said in *Kane*, 706 P.2d at 680, is:

> Our statutes specifically reserve the right of each spouse to own and convey his or her separate property. Sections 20–1–201 and 20–1–202(a), W.S.1977. That right, however, is adjusted upon the filing of a complaint for divorce. At that juncture

1. W.R.C.P. 24 reads, in relevant part:
   (a) *Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action:
   (1) When a statute confers an unconditional right to intervene; or
   (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
   (b) *Permissive intervention.*—Upon timely application anyone may be permitted to intervene in an action:
   (1) When a statute confers a conditional right to intervene; or
   (2) When an applicant's claim or defense and the main action have a question of law or fact in common.

the jurisdiction of the district court is invoked to provide for an equitable distribution of the property of the parties in accordance with § 20–2–114, W.S.1977. We conclude that the effect of our statute is quite similar to the effect ascribed to the Kansas statute in *Cady v. Cady*, 224 Kan. 339, 581 P.2d 358 (1978). That court held that prior to the filing of the divorce petition a spouse had only an inchoate interest in property held in the name of the other spouse. When the divorce complaint is filed, however, that inchoate interest vests subject to definition and determination by the divorce court. At that juncture a species of common or co-ownership is identified, but that property is not then divided until the ultimate decree of the court. Other courts have reached a similar conclusion with respect to equitable distribution statutes. *Marriage of Brown*, 179 Mont. 417, 587 P.2d 361, 365 (1978); *Imel v. United States*, 184 Colo. 1, 517 P.2d 1331 (1974); *Imel v. United States*, 523 F.2d 853 (10th Cir.1975); *Collins v. Oklahoma Tax Commission*, Okl., 446 P.2d 290 (1968); *Collins v. C.I.R.*, 412 F.2d 211 (10th Cir.1969).

In this regard then we hold that even though property is owned separately by one spouse, as in this case, at the time the complaint in the divorce action is filed the other spouse acquires a co-ownership interest in that property which is not defined until the entry of the decree which articulates the property settlement. The inchoate interest of the spouse in separate property of the other spouse is vested at the time the divorce action is filed and at that time is converted into a species of common or co-ownership. When the decree is entered it divides property which is held by the parties as co-owners. In any instance in which, as here, the trial court grants each party a one-half interest in a given property, the co-ownership continues until disposition of the property. If the trial court awards all of a given property to one party, that award is also a disposition of property held by co-owners, but the party awarded the property then owns it as an individual. Because of our prior opinions in this case we have no difficulty in extend-

ing this concept to the ranching property which was situated in Montana.

■ It is clear from this language that the interest vested in the separate property of the other spouse does not afford an ownership interest to the non-owning spouse; instead, it is a right to have the assets included in the marital estate which the court will divide. Mr. Thompson had no possessory or marketable interest in Mrs. Thompson's property, and he had nothing to which a lien could attach. The limited purpose of the co-ownership right as identified in *Kane* does not provide Mr. Thompson with an ownership interest to which any rights of the Nielsons could attach. It is clear that the Nielsons could not have levied execution on any property involved in the marital estate until it actually was divided by the district court.

■ While this Court has said that third parties claiming rights in property that is subject to a property settlement may intervene or be joined, we were not addressing the rights of a judgment creditor. *Merritt v. Merritt*, 586 P.2d 550, 554 (Wyo.1978). Some states, notably those with community property laws, permit creditors to intervene in divorce actions as a matter of course. *Elms v. Elms*, 4 Cal.2d 681, 52 P.2d 223, 224 (1935); *Malcolm v. Malcolm*, 75 N.M. 566, 408 P.2d 143, 144 (1965); *Fletcher v. National Bank of Commerce*, 825 S.W.2d 176, 179 (Tex.App. 1992); *Boyle v. Boyle*, 194 W.Va. 124, 459 S.E.2d 401, 404 (1995). On the other hand, several states bar creditors from intervening in divorce cases. *Eberly v. Eberly*, 489 A.2d 433, 446 (Del.Supr.1985); *Poteat v. Poteat*, 632 S.W.2d 511, 512 (Mo.App.1982); *Foundation Sav. & Loan Co. v. Rosenbaum*, 113 Ohio App. 501, 171 N.E.2d 359, 360 (1960); *Bailey v. Bailey*, 312 S.C. 454, 441 S.E.2d 325, 327 (1994). We are convinced that the authority of the court in a divorce action to divide property is simply ancillary to its authority to dissolve the marriage. The primary subject of a divorce action is the dissolution of the marriage, and the only proper parties to such an action are the spouses seeking to be divorced. *In re Marriage of Soriano*, 44 Wash.App. 420, 722 P.2d 132, 133 (1986).

We also have defined, subsequent to *Kane*, an inchoate interest. In *Bummer v. Collier*, 864 P.2d 453, 457 (Wyo.1993), we said:

An inchoate lien is one that "may become certain as to amount, identity of the lienor, or the property subject thereto only at some time subsequent to [the date of the lien's creation.]" *United States v. New Britain*, 347 U.S. 81, 86, 74 S.Ct. 367, 370–71, 98 L.Ed. 520, 526 (1954). *See also Danbury Sav. & Loan Ass'n v. Delaney*, 207 Conn. 743, 542 A.2d 1153, 1156 (1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 775. In our case, the real property subject to the lien could not be identified until the partnership had conveyed title to the real property to Mr. Collier.

As was true in *Bummer*, the real property which might have been subject to any lien on the part of the Nielsons could not be identified until the district court had made the property division in the divorce case. The Nielsons' interest was inchoate according to this definition. It is clear that the Nielsons did not have the requisite interest in the property involved in the divorce case between the Thompsons that would afford them standing to intervene. *Poteat*, 632 S.W.2d at 512, states this concept very clearly. Consequently, the Nielsons had no right to intervene and should not be heard to complain over having been permitted to intervene but having their rights as intervenors limited.

The Nielsons cite three cases from other jurisdictions for the proposition that intervention is an "all or nothing" proposition. Once it is granted, it is not subject to limitation or conditions. A Wyoming case exists, not mentioned by either party in this case, that suggests the same thing without precisely articulating that concept. *Rocky Mountain Packing Co. v. Branney*, 393 P.2d 131, 132–33 (Wyo.1964). Subsequent to the decision of this Court in *Branney*, however, a body of law had developed that clearly supports the authority of the district court to limit the role of an intervenor. *Beauregard, Inc. v. Sword Services, L.L.C.*, 107 F.3d 351, 352–53 (5th Cir.1997) ("[a]lthough not without some controversy, it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right.") (footnote omitted); 28 U.S.C.A. Rule 24, Advisory Committee Notes, 1966 Amendment (1992) ("[a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

We have said repeatedly that federal interpretations of federal rules are highly persuasive in our interpretations of similarly worded state rules. *In re Paternity of IC*, 941 P.2d 46, 50 (Wyo.1997); *Dobbins v. State*, 483 P.2d 255, 258 (Wyo.1971). Our rule which governs intervention, W.R.C.P. 24, is identical to F.R.C.P. 24. The authorities cited above clearly have interpreted F.R.C.P. 24 to allow limitations on the scope of intervention. We are persuaded that this is the appropriate interpretation of the rule relating to intervention, and we hold that even if an intervenor comes in as a matter of right, a district court may limit the role of the intervenor in the litigation.

In summary, we hold that the Nielsons had no right to intervene in the Thompsons' divorce action. Therefore, the Nielsons' complaints about the limited scope of the intervention afforded are without merit. Furthermore, we hold that a district court is within the proper exercise of its discretion when it places reasonable limits or conditions upon intervenors even if they properly intervened.

We affirm the district court's Decree of Divorce.