No. 48,129

DIRK W. SLAVENBURG, *Appellee,* v. DONALD R. BAUTTS, *Appellant.*

(561 P. 2d 423)

Opinion filed March 5, 1977.

*Christopher A. Randall,* of Turner and Hensley, Chartered, of Great Bend, argued the cause, and *Lee Turner* and *Raymond L. Dahlberg,* of the same firm, were on the brief for the appellant.

*Jerry K. Levy,* of Michaud and Cranmer, Chartered, of Wichita, argued the cause, and *M. William Syrios,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This action arose out of an automobile accident in Hutchinson, Kansas. Plaintiff recovered a jury verdict and defendant appeals raising one point. He claims the trial court erred in refusing to continue the trial to afford defendant an opportunity to present his medical expert. We agree with defendant and grant a new trial, but limit the new trial to the issue of damages.

Plaintiff was driving a pickup truck north and defendant was driving an automobile south on Monroe Street. As the two parties approached one another at the intersection of Monroe and 56th Streets, defendant apparently attempted to turn left and pulled into the left lane of traffic directly in front of plaintiff. Plaintiff applied his brakes but could not stop before striking defendant

nearly head-on. On impact plaintiff was thrown about in his vehicle and sustained injuries.

Damages were hotly contested. Plaintiff introduced evidence tending to show that prior to the accident he had been a healthy, hard-working, injury-free man; that as a result of the accident he sustained temporary and permanent injury to his chest, hip, leg, knees, upper back and head; that despite extensive medical treatment he still had considerable pain and disability; and that since the time of the accident he was unable to work regularly.

Defendant proceeded on the theory that plaintiff was not injured in the accident, and if disability did exist it was due to prior job-related injuries as a construction worker. Both defendant and a sheriff's officer testified that at the scene of the accident they inquired if plaintiff was injured and received a negative reply, and plaintiff appeared to them to be uninjured. During cross-examination plaintiff admitted he had been treated for various back, neck and other body discomforts prior to the accident.

On the first day of the three-day trial plaintiff called two witnesses—the sheriff's officer and plaintiff; whereupon, the court was forced to recess because other plaintiff witnesses were not available. The next morning defendant introduced two witnesses out of order to accommodate a lack of plaintiff witnesses. Plaintiff then presented four other witnesses. Defendant took the stand. At the end of the second day of trial plaintiff announced he had no further witnesses until 1:30 p. m. on the following day when he would call Dr. John Lance of Wichita, Kansas. The following transpired:

"THE COURT: Anything else?

"MR. TURNER: I have nothing more at this time, your Honor.

"MR. LEVY: Not at this time.

"THE COURT: Well, the 7th of March I scheduled this case for trial. I allowed four days. I have seven criminal cases starting Monday and three civil cases after that as fast as we can go. How you schedule your witnesses is fine but I do not want to recess until tomorrow at 1:30 because by the time you get through with all of them you'll be clear up to Friday night again. I can't juggle this jury and go on with my other cases. I don't think I should be required to recess until 1:30 tomorrow because of lack of witnesses.

"MR. TURNER: In responding to the Court's statements, I have one other witness to call, that's Joseph Lichtor. I had arranged to fly him back from Mexico and have him present in court today, then I was advised by the Plaintiff attorney that he did not intend to call Doctor Lance until tomorrow afternoon at 1:30. Of course, under the rules Plaintiff presents their evidence, rests, and I'm entitled to present my evidence last. I've been interspersing my evidence to help Plaintiff along. In view of the fact he hasn't completed his case yet, I think it's important to note he has not completed his case, and I'm

within my rights to wait until his doctor, his specialist has testified to put on my specialist. That's all I have left to do and I was fully prepared to have him here today until I was advised a few days ago they wouldn't be finished until tomorrow afternoon.

"Mr. Levy: If it please the Court, these are matters that probably should be taken up outside the presence of the jury.

"The Court: Ladies and gentlemen, would you mind stepping outside a minute, please?

(The jury left the courtroom)

"The Court: Did you take his deposition?

"Mr. Levy: He was not any more available for deposition.

"The Court: Was Doctor Lance's deposition taken?

"Mr. Levy: No, it has not been. Your Honor, so the record is clear, in Sedgwick County we have what's known as a Medical-Legal Code which requires really we bend over backwards to make arrangements for the doctors, especially when they're going to have to be out of town to testify. We give them the opportunity to schedule it. We do not issue subpoenas to doctors unless we call them up two weeks in advance and tell them we are going to subpoena them. Doctor Lance is just back to his office having been either on vacation or gone at least for a couple of weeks. He got back, he had all these schedules, he is full solid. I asked him and his secretary when we could make him available, he said Thursday afternoon was the first chance that they would have to cancel. At that time they were cancelling something like twenty appointments for him to be here then. I did try—I have tried again to see if he would come, if he could come in the morning. He is now going to be in surgery in the morning. I understand the Court's position, I understand he wants to get the case tried as much as—no more than I want to get it tried, but I've done my best to get him here.

"The Court: Did you subpoena him? He's subject to subpoena, and remember that we had that out with that Overland Park doctor on whether they were going to come and testify.

"Mr. Levy: I'm trying to explain in Sedgwick County we do have this code that we are committed to abide by and to follow.

"The Court: This is not Sedgwick County. To my knowledge we have no code that says a doctor is not subject to subpoena the same as anybody else.

"Mr. Levy: I understand.

"The Court: I don't think I'm bound by it. In other words, what you're saying, a lawyer can force a court to delay a trial until he decides—until he gets his doctor up here without subpoenaing, and I don't think that's right. I don't know. I think maybe the Supreme Court can test it out. Are there any witnesses we can call at all now?

"Mr. Turner: I have one more, Doctor Lichtor.

"The Court: He's not here?

"Mr. Turner: No. No, I had arranged when I heard it would be Thursday, I arranged to fly him back. He'll be here tomorrow to testify after Doctor Lance.

. . . . . . . . . . . . . .

"The Court: Well, my problem is this, if we start tomorrow afternoon

then we'll run all day on Friday and we'll not have time for a jury by the time we get through with the evidence, Instructions, and we're going to have the jury going over till Monday again.

"MR. LEVY: I think we can get to the jury if we work till 6:00 o'clock tomorrow. I believe we can get to the jury Friday morning.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

THE COURT: Right or wrong, I'm going to test it out in the Supreme Court, he better be here at 9:00 o'clock tomorrow morning. That's it. Subpoena power is available.

"MR. TURNER: Okay. I'll be here.

"THE COURT: I'm wasting now the rest of the afternoon. We'll recess until 9:00 o'clock. Call the jury back in and we'll recess them until tomorrow."

The following morning plaintiff announced Dr. Lance could not appear until 1:30 p. m. At that point the trial court announced that plaintiff had rested his case. The court then instructed defendant to proceed. Defense counsel told the court his only remaining witness was Dr. Lichtor, of Kansas City, who had not yet arrived. Upon request of defense counsel the court granted a ten-minute recess. When court reconvened defense counsel told the court the doctor was on his way. The court proceeded to give jury instructions. Dr. Lichtor arrived in the courtroom as the court concluded instructions. The court did not allow the doctor to testify.

A trial court has the inherent authority to control its docket to eliminate procrastination and delay in order to expedite the orderly flow of business, but the power is not absolute and should be exercised with sound discretion. (*Carter v. State Department of Social Welfare,* 186 Kan. 187, 348 P. 2d 609; *City of Wichita v. Houchens,* 184 Kan. 297, 335 P. 2d 1117; 88 C. J. S., Trial, § 18, p. 49.)

In *Bane v. Cox,* 75 Kan. 184, 88 Pac. 1083, this court stated:

"It is the duty of litigants to exercise great diligence both in prosecuting and in defending actions in court, and, as there are usually many cases set for hearing at each term of the district courts, the orderly dispatch of the business and the protection of other litigants from expensive delays and accumulating costs make it the duty of the court strictly to require the parties to every action to be ready for trial promptly at the time the case is set for hearing or to prove that in the exercise of due diligence they have been unable to do so. So great is the necessity for the prompt dispatch of court business that the statute authorizes courts to and they generally do impose upon the unfortunate litigant who, even through no fault of his own, is unprepared to proceed at the time set all the costs of the necessary delay. This is usually sufficient to insure the making of every reasonable effort to be ready at the time appointed, unless vexation and delay be the real object of the litigation or unless some real or fancied advantage may accrue to one party by a course of procrastination. In such cases of designed obstruction or in case of gross or reckless inaction, if the fault be on the part of the plaintiff, it may become the duty of the

court to dismiss his action; if the defendant be at fault he may be penalized by proceeding with the trial notwithstanding his unreadiness.

"The incidents of life, however, refuse to conform themselves to the plans of any man or to march in regular procession on the order of any court or earthly power. Even death steps in at the most unanticipated times to stay proceedings. It should be borne in mind that mere order and regularity of proceeding are not the purpose for which courts exist and are held, but are only aids to the grand purpose of dispensing justice, and should not be carried to the extreme and become the cause of injustice. 'Extreme justice is injustice.'" (pp. 185, 186.)

Several cases have held it to be an abuse of discretion to refuse a recess to permit the reception of a physician's testimony. In *Logan v. McPhail*, 208 Kan. 770, 494 P. 2d 1191, the trial court dismissed an automobile negligence case when the plaintiff's expert medical witness was five minutes late in arriving. This court held the action was an abuse of discretion and reversed. In *O'Malley v. City of New York*, 16 App. Div. 2d 942, 229 N. Y. S. 2d 489 (1962), the court held exclusion of a medical examiner's testimony error when the evidence showed he was on his way to the courthouse. In *Simon v. Goldberg*, 39 App. Div. 2d 758, 332 N. Y. S. 2d 214 (1972), a similar ruling was made in an automobile negligence case where two physicians needed two hours to get to the court and one physician would testify that the injured plaintiff had a previous back injury and laminectomy five years earlier. The supreme court in *Herbert v. Garner*, 78 So. 2d 727 (Fla. 1955), reversed the trial court's decision in another automobile negligence case because the trial court refused to grant an overnight delay when the physician, who lived thirty miles away, would have been present except for the existence of a medical emergency. Finally, in *Pepe v. Urban*, 11 N. J. Super. 385, 78 A. 2d 406 (1951), the trial court was reversed for refusing an overnight delay when a physician, who would testify on damages, could not appear because he was performing an operation. See also, *Matter of Bluttal*, 37 App. Div. 2d 530, 322 N. Y. S. 2d 18 (1971); *Jarvis v. Stoddart*, 215 App. Div. 523, 213 N. Y. S. 829 (1926).

The problem before this court is a troublesome one. On one hand the trial court is charged with the responsibility of moving cases and promoting the orderly dispatch of judicial business. The expert medical witness, on the other hand, is often engulfed in a demanding professional practice which, because of tight schedules and unforeseeable emergencies, makes it difficult to appear at a time convenient to court and counsel.

The power to grant a recess is inherent within the trial court's power to control the orderly movement of cases within sound judicial discretion. (*Mooney v. Olsen*, 22 Kan. 69, 80, 81; 88 C. J. S., Trial, § 45, pp. 113-15.) This includes the right to deny or grant a recess due to the absence of a witness. Exercise of this discretion, however, demands consideration of many factors. In ruling on a motion to recess because a witness is unavailable the court must consider and balance factors including counsel's diligence and effort to gain attendance of the witness, the reason the witness is not present, the nature of the witness's expected testimony, whether the testimony is critical evidence or merely cumulative, the amount of the delay expected, the effect of the delay on the docket of the court, and the overall injustice which might result if the delay were denied.

Our decision is based on the circumstances existing at the time the trial court refused to delay the trial. At that time the trial court knew (1) that Dr. Lichtor was on his way from Wichita to Hutchinson by auto; (2) that his testimony would contradict plaintiff's evidence as to plaintiff's injuries; (3) that his testimony was important to the defense and was not cumulative; (4) that when plaintiff had no available witnesses, defendant accommodated plaintiff by using defendant's witnesses out of time; (5) that defendant had the right to assume he could use Dr. Lichtor after Dr. Lance testified and he was not aware the court would refuse to permit Dr. Lance to testify at 1:30 p. m. on Thursday until the afternoon before; (6) that even if the court permitted Dr. Lichtor's testimony it was not likely the court's schedule of cases for Monday would be affected; and (7) that without the testimony of Dr. Lichtor an injustice might result.

Having objectively considered the foregoing balancing factors, we believe a new trial should be granted. Since the issue of liability has been litigated and decided by the jury the new trial should be limited to the issue of damages. (*Carlgren v. Saindon*, 129 Kan. 475, 283 Pac. 620.)

Reversed and remanded for a new trial on the issue of damages.