(775 P.2d 190)

No. 62,612

In the Matter of the Marriage of COLLEEN BLAGG, *Appellee,* and STEVEN ROBERT BLAGG, *Appellant.*

Opinion filed June 2, 1989.

*Robert F. Duncan,* of Duncan, Senecal & Bednar, Chartered, of Atchison, for the appellant.

*J. David Farris,* of Law Offices of J. David Farris, of Atchison, for the appellee.

Before ABBOTT, C.J., LEWIS, J., and C. FRED LORENTZ, District Judge, assigned.

ABBOTT, C.J.: Respondent Steven Robert Blagg appeals from that part of the trial court's judgment ordering him to pay one-half of the medical expenses incurred since his divorce and awarding him $781 damages for petitioner's refusal to allow him to claim their child (Ashley) as a dependent on his income tax returns. Respondent claims he should have been awarded $938.

Petitioner filed a motion to increase child support from $180 a month and to require the respondent to provide health insurance for their daughter. Respondent agreed to furnish health insurance. The parties also agreed to argue the two issues before us on appeal, although formal motions do not appear to have been filed.

The trial court reduced child support to $155 a month (not appealed); ordered respondent to pay one-half of the accumulated medical expenses ($1,750); and ordered petitioner to pay respondent $781 to reimburse respondent for the additional income tax he was required to pay on his 1985, 1986, and 1987 tax returns because petitioner refused to allow him to claim

Ashley as a dependent, contrary to court order. Respondent appeals.

## 1. Medical Expenses

At the hearing on her motion to increase child support, petitioner also requested reimbursement for $3,501.85 of Ashley's health-related expenses. Because the original divorce decree had not ordered either party to provide health insurance coverage for the child, petitioner argued she should be reimbursed for part of the money she had spent since the divorce for Ashley's medical bills. Respondent argues that the court's order, requiring him to reimburse petitioner for half of those expenses, impermissibly modified his support order retroactively.

Kansas follows the general rule that, although a trial court has authority to modify a previous support order, the new order cannot increase or decrease amounts past due. "In other words, the modification must operate prospectively and not retroactively." *Davis v. Davis*, 145 Kan. 282, 65 P.2d 562 (1937). The trial court specifically found the medical bills to be "extraordinary medical expenses" not included in child support. The court reasoned that child support encompasses only "every-day living costs for the child" and has nothing to do with "extraordinary medical expenses." Because it had not addressed the issue of medical insurance or responsibility for medical expenses in its original order, the trial court held it could rule on the matter. It analogized the medical expenses to marital property not previously covered and back child support.

Generally, when a judicial decree or order obligates a parent to pay a certain amount for child support, that amount is the limit of the parent's liability; accordingly, the parent responsible for the child support is not liable for extraordinary medical or surgical expenses. The rationale for the general rule varies from state to state.

In *Dougal v. Dougal*, 143 Cal. App. 2d 272, 276, 299 P.2d 404 (1956), the court held that a trial court has jurisdiction to modify its support order, but does not have jurisdiction to reimburse a party for expenditures voluntarily made. In that case, reimbursement was sought for orthodontic and dental care, as well as treatment by an endocrinologist. The appellate court held the trial court is presumed to have included in its support order an amount sufficient for medical and dental care.

In *Karminski v. Karminski*, 260 App. Div. 491, 494, 23 N.Y.S.2d 141 (1940), the court held a decree of divorce fixing child support is intended to limit the liability of the father for all expenses for the maintenance of the child, even though the amounts are for necessaries of an extraordinary nature. The court specifically stated that its holding did not relieve the father of his obligation to support his child but merely limited the amount of the liability to the trial court's order until that judgment is modified. See also *Larkin v. Larkin*, 261 Minn. 414, 113 N.W.2d 75 (1962) (in the absence of exceptional circumstances, the father could not be ordered to reimburse the mother for the costs of hospitalization and treatment for their child's abnormal dehydration); *Hess v. Slutsky*, 224 Ill. App. 419 (1922) (a noncustodial parent is not liable for medical services furnished for a child in the absence of an express promise to pay or of facts from which a promise can be implied).

In the present case, the dates of the bills submitted to the trial court spanned a period of time from July 30, 1984, to the time of the trial court hearing in early 1988. The majority of bills were for doctors' visits and prescriptions associated with Ashley's allergies. Also included, however, were the costs of a physical, X-rays and treatment for a broken arm, and two hospitalizations, the first for acute bronchitis in December 1985, and the second in July 1986. We also note a number of the bills appear to have been paid in whole or in part by a health insurance policy. The trial court did not specifically order either party to provide medical insurance coverage or the costs of medical treatment for Ashley in its 1985 divorce decree. Although it is unclear whether the parties were aware of Ashley's medical needs at the time of the divorce, it is apparent from the record she was then receiving regular medical care.

The trial court likened its order to reimburse petitioner for past medical expenses to an exercise of the court's power to "order payment for back child support" or "division of property when it has not been previously covered"; however, the order for reimbursement is neither. Because the respondent was not previously ordered to provide for Ashley's medical expenses, the order is not an order for payment of back support. Because the medical bills had not yet been accrued at the time of the divorce

decree, they do not constitute a debt that had not been divided at the time of the property settlement.

The trial court held that, where an unforeseen expense is incurred, it can be addressed equitably by the court at any time. The court likened the medical expenses in the instant case to an orthodontic bill, educational expenses, or a trip to New York to visit a "long lost aunt." The court reasoned that all of these expenses are in the best interest of the child and the custodial parent would be entitled to reimbursement for the expenses.

Where the expenses incurred in each of the court's examples might be considered material changes in circumstances, it is not readily apparent why a custodial parent could not have gone back to court to get an increase in support ordered before incurring the expense. None of the court's examples clearly constitutes an emergency, or even an unforeseen situation.

Obviously, in ordering support for a minor child, the trial court should provide for medical insurance and health care in its order. This ensures that the child and society are protected and the parents can plan their lives free of being ordered to pay all or part of a catastrophic bill. That was not done in the present case, however. Here, Ashley's medical bills accrued over a period of years and are not of an emergency nature. Although her medical condition may have been unforeseen, the petitioner could have requested an increase in child support at any time in order to pay the future expenses.

We hold that a child support order sets the "limit" of liability for the person ordered to pay support until that decree is modified. The court's order that the respondent reimburse the petitioner for half of past medical expenses under the facts of this case constitutes an improper retroactive increase in child support.

## 2. Taxes

In its 1985 divorce decree, the trial court ordered that the respondent be allowed to claim the minor child as an income tax exemption, provided he was current with his child support payments. In its 1988 order, the court found:

"[S]ince the petitioner did not allow the respondent to claim the minor child as an income tax exemption for the years 1985, 1986, and 1987, the Court believes that there would be an approximate total amount of $2,400.00 that the respondent could have claimed, and based upon a 25 percent income tax rate, the respondent has lost approximately $600.00."

The court gave the respondent a $600 credit toward the $1,750 it ordered respondent to reimburse petitioner for medical expenses.

In a motion for reconsideration, the respondent argued that, had he been allowed to claim Ashley as an exemption during 1985, 1986, and 1987, it would have made a $781 difference in his tax payments. Respondent's figure was based on an average income of $20,000 for three years, although respondent noted his actual income had been $17,309 in 1985, $20,030 in 1986, and $20,855 in 1987. The amounts of the exemptions allowed were $1,040 in 1985, $1,080 in 1986, and $1,900 in 1987. In his motion, respondent stated he would submit an affidavit from a qualified tax expert with exact figures at the hearing on his motion.

On April 28, 1988, respondent filed an affidavit from an H & R Block employee indicating respondent's federal and state tax savings would have been $938 if he had been allowed to claim Ashley as an exemption during the 1985-87 tax years. The difference in the $781 figure included in the respondent's motion to reconsider and the $938 figure submitted by the tax expert appears to be the result of respondent's use of $20,000 as an income estimate for all three years and his failure to consider the state tax savings.

In its order filed May 3, 1988, the trial court reconsidered and adjusted its order to reflect a credit of $781 for respondent's lost tax exemptions. The court denied a second motion to reconsider the amount to be credited to respondent based on the tax expert's figures, because "the respondent's motion is for reconsideration and there is some new documentation submitted which the respondent did not submit after the first hearing." The court noted it had changed the amount to $781 because of the court's "faulty arithmetic."

Here, the motion to reconsider is in substance a motion to alter or amend under K.S.A. 60-259(f). *Thomas v. Davis-Moore Datsun, Inc.*, 11 Kan. App. 2d 622, 623, 731 P.2d 1283 (1987). The purpose of K.S.A. 60-259(f) is to allow the trial court the opportunity to correct prior errors. *Denno v. Denno*, 12 Kan. App. 2d 499, 501, 749 P.2d 46 (1988). If the trial court truly changed the $600 amount to $781 to correct its "faulty arithmetic," it logically should have considered the affidavit submitted by the respondent at a hearing on the second motion to reconsider, since it was

based on exact income and exemption figures and determined both state and federal tax savings. The trial court erred by not hearing evidence on the motion to reconsider. On remand, the trial court may also want to consider whether respondent was current in his child support payments, as the divorce decree entitles respondent to the exemption only if he is current.

Reversed and remanded.