No. 67,023

In the Matter of the Marriage of RICHARD A. SODEN, *Appellee/Cross-appellant*, and CONNIE B. SODEN, now CONNIE B. DILLNER, *Appellant/Cross-appellee*.

(834 P.2d 358)

Opinion filed May 22, 1992.

*Robert E. Keeshan*, of Hamilton, Peterson, Tipton & Keeshan, of Topeka, argued the cause and was on the briefs for appellant/cross-appellee.

*Christel E. Marquardt*, of Levy and Craig, P.C., of Kansas City, Missouri, argued the cause and was on the brief for appellee/cross-appellant.

*Danny J. Vopat*, of Topeka, was on the brief for *amicus curiae* Third Judicial District Court Trustee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by Connie B. Dillner, formerly Connie B. Soden, (Dillner) from the trial court's affirmance of the administrative hearing officer's order reducing child support payments and other orders concerning support of the minor children. Her former husband, Richard A. Soden, (Soden) cross-appeals.

Most of Dillner's complaints center around the expedited judicial process used in this case; she also alleges the reduction of child support was in error. Soden's cross-appeal concerns the admissibility of evidence by the administrative hearing officer (AHO), a contention that Dillner's appeal was not filed timely, and allegations that Dillner failed to raise most of the issues at the trial court level. Both parties request attorney fees.

Dillner and Soden were divorced on May 26, 1989, after almost 20 years of marriage. Three children were born to the marriage. Soden was ordered to pay child support in the amount of $1,350 a month. Child support payments were to be reduced $450 a month as each child reached majority.

Soden and Dillner entered into a property settlement agreement, which was incorporated into the divorce decree. As a part of that agreement, Soden and Dillner each pay $300 a month on a farm loan. Soden agreed to provide health insurance for the children. They were to divide equally all medical bills not covered by health insurance. Soden was given the right to claim the children as dependents for tax purposes. Other provisions were made in the property settlement agreement, and they will be set forth, if helpful, in deciding the issues.

At the time of the divorce, Soden was working two jobs, putting in 72 hours a week as a nurse. He had been working two jobs since 1974. Dillner formerly was employed as a secretary; however, she developed carpal tunnel syndrome in her left hand. Because surgery failed to correct the problem, she is no longer able to type for a living. At the time of the divorce, Dillner was not employed "regularly" outside of the home. Shortly after the divorce, she was offered a contract to work as a full-time bus driver four hours daily during the school year.

Dillner continues to raise and board horses on the farm. When her deposition was taken, Dillner had four horses of her own, including a miniature horse, and boarded three others. Dillner takes care of the horses and treats their injuries.

On February 1, 1991, Soden filed a motion to reduce child support. He estimated his monthly income to be $5,202. Dillner estimated her monthly income to be $627. On March 29, 1991, Soden filed an amended motion, informing the court he had reduced his work week to 40 hours and would earn $2,908 monthly.

The AHO conducted a hearing on Soden's motion. On May 9, 1991, the AHO reduced Soden's child support payment to $862. The AHO also ordered the following: Soden and Dillner were to share proportionately all future unreimbursed medical expenses. Dillner would now have the tax exemption for the middle child; Soden would retain the other two exemptions.

Dillner filed a petition for judicial review with the District Court of Shawnee County. The trial court granted review and notified the parties that the "[c]ourt has scheduled 30 minutes for argument on appeal. No evidence not presented to A.H.O. will be considered." After argument, the trial court notified the parties that the AHO order was affirmed, with one modification. The order modifying support was not effective until June 1991. On July 29, 1991, the trial court's ruling was journalized.

Dillner filed a timely notice of appeal. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

The legislature enacted K.S.A. 1991 Supp. 20-164, which authorizes this court to establish by rule an expedited judicial process for, among other things, modification of child support orders. Pursuant to K.S.A. 1991 Supp. 20-164, this court adopted Supreme Court Rule 172 (1991 Kan. Ct. R. Annot. 131), which states in pertinent part:

"(a) The administrative judge in each district shall provide for an expedited judicial process which will increase effectiveness in support, visitation, and parentage proceedings by appointing one or more judges or court trustees to preside as hearing officers at summary hearings relating to the establishment, modification, or enforcement of [child] support . . . .

"(b) The hearing officer is authorized to:

(1) Take testimony and prepare written findings of fact and conclusions of law which shall constitute the summary record.

(2) Evaluate evidence and decide the most expeditious manner either to establish or to enforce court orders.

. . . .

(5) Enter orders, including default orders, as necessary; orders proposed by court trustees shall be approved by a judge before the order is issued.

"(c) District and associate district judges, district magistrate judges, and court trustees shall be considered qualified to serve as hearing officers at expedited judicial process hearings.

. . . .

"(g) Decisions of district magistrate judges or court trustees appointed pursuant to this rule shall be subject to review by an associate district judge or district judge on the motion of any party filed within 10 days after the order was entered."

The District Court of Shawnee County has established the following procedures, pursuant to local rule 3.401:

"8. (a) Expedited Judicial Process. Pursuant to K.S.A. 20-164 and Kansas Supreme Court Rule No. 172 . . . , a deputy court trustee shall be appointed by the Administrative Judge and designated as the hearing officer

for summary hearings relating to the establishment, modification or enforcement of child support orders and visitation rights. The hearing officer shall be vested with all of the authority and shall be subject to the limitations of Rule 172.

. . . .

"(c) Hearing Officer Powers. Matters cognizable by the hearing officer shall include motions to establish or modify child support . . . . .

. . . .

"(g) Judicial Review. All orders issued by the hearing officer shall be subject to judicial review on the written motion of any party filed within ten (10) days after the order is filed with the clerk. If no motion is filed within ten (10) days objecting to the hearing officer's order, it shall be deemed a final order of the district court."

Additionally, in December 1990, Shawnee County announced the development of Family Law Guidelines. They provide, in pertinent part:

"4. POST JUDGMENT MOTIONS TO MODIFY CHILD SUPPORT

A. Administrative Hearing Officer. All post judgment motions requesting modification of child support orders are assigned for hearing to the Administrative Hearing Officer. See District Court Rule 3.401(8).

. . . .

C. Procedure Before the Administrative Hearing Officer.

. . . .

(4) Hearings before the Administrative Hearing Officer are informal in nature and generally are expected to last about one-half hour. Any counsel anticipating a more lengthy hearing should advise the District Court Trustee's office when a hearing time is requested.

. . . .

D. Judicial Review. Either party shall have ten (10) days from the filing of the order of the Administrative Hearing Office to file a Motion for Judicial Review. The District Judge assigned to domestic matters will review the Administrative Hearing Officer's decision and may affirm the decision or grant a re-hearing on the motion before a District Judge."

Although not applicable to this case, the 1992 Family Law Guidelines include the following changes and additions that are applicable to future cases.

"4.05 Stenographic Record.
A stenographic record is not provided in proceedings before the AHO. The record will consist of the Hearing Officer's findings, order and any exhibits presented. If counsel wish a stenographic record of the proceedings before the Hearing Officer, they should retain a court reporter.

"4.06 Judicial Review.

Either party shall have ten (10) days from the filing of the order of the Administrative Hearing Officer to file a Motion for Judicial Review. The District Judge assigned to domestic matters will review the Administrative Hearing Officer's decision and may affirm the decision by denying the appeal, grant oral argument or a re-hearing before a District Judge. Evidence and issues not presented to the Hearing Officer will not be considered by the Court on appeal. The District Court Trustee's Office will send notice to the parties of the District Judge's denial or hearing setting on Motions for Judicial Review.

All Motions for Judicial Review should be accompanied by a memorandum which sets forth the claimed error of the AHO. This memorandum is a very important step in appealing the AHO decision as oral argument or re-hearing is frequently denied, absent a statement showing good cause."

Dillner argues it is unconstitutional to deny litigants sufficient time to present all relevant evidence, including past divorce and support matters, to a trial judge, with an official record of the proceeding taken. The essence of her argument is that the trial court unconstitutionally delegated the authority to an AHO to hear child support modification motions, in the form of an expedited judicial process, without providing for a trial de novo at the trial court level. Dillner does not address whether her constitutional challenge is to K.S.A. 1991 Supp. 20-164, Supreme Court Rule 172, or Shawnee County's local rules. Because K.S.A. 1991 Supp. 20-164 is the enabling legislation for the expedited judicial process, Dillner's challenge will be addressed in terms of challenging the constitutionality of a statute.

Before Dillner's constitutional challenge is examined on its merits, Soden's argument that Dillner raised the issue for the first time on appeal is addressed. The parties dispute whether the constitutional issue was raised in the trial court.

The AHO's notes stated, "[Dillner] wants noted that [s]he believes this hearing [is] a violation of due process because [of] no opportunity for de novo review." The petition for judicial review did not raise any constitutional issues. In defense, Dillner contends "it would not be necessary to raise these issues if de novo due process review on the record were provided." Dillner also raised the due process and remedy by due course of law issues to the trial judge in oral argument held on June 26, 1991. The issue presented in the trial brief was, "May the Court, in a

domestic relations action, unreasonably limit the time in which a litigant has to present his case?"

In the context of constitutional questions raised for the first time on appeal, this court has held:

" 'The constitutionality of a statute should be considered in any action where it is necessary in order to determine the merits of the action or where the issues cannot be intelligently decided without doing so, notwithstanding the failure of the parties to raise the constitutional question, failure to plead the question, or failure to present the question to the trial court.' [Citation omitted.]" *Van Sickle v. Shanahan*, 212 Kan. 426, 434, 511 P.2d 223 (1973).

See also *In re Conservatorship of Marcotte*, 243 Kan. 190, 196, 756 P.2d 1091 (1988) (three exceptions to the general rule that issues raised for the first time on appeal will not be reviewed).

It is necessary for the resolution of this case to address the constitutional questions. The issues cannot be decided without doing so. Dillner did raise some of the constitutional issues before the trial court, although not with the clarity and effort made on appeal.

Dillner cites numerous cases, both from Kansas and from other jurisdictions, in an attempt to bolster the merits of her constitutional challenge. For example, Dillner cites cases in which the Court of Appeals reversed a trial court's refusal to allow a full hearing on motions to reconsider or to modify child custody. See *In re Marriage of Blagg*, 13 Kan. App. 2d 530, 775 P.2d 190 (1989); *Anhalt v. Fesler*, 6 Kan. App. 2d 921, 636 P.2d 224 (1981); *Rosenberg v. Rosenberg*, 6 Kan. App. 2d 882, 636 P.2d 200 (1981), *rev. denied* 231 Kan. 801 (1982). We have examined the cases. They deal with abuse of discretion issues and are not applicable to the case at hand.

Dillner states that this court has not directly addressed whether the expedited judicial process is constitutional; however, she suggests the following Supreme Court cases provide guidance.

In *Slavenberg v. Bautts*, 221 Kan. 590, Syl. ¶ 1, 561 P.2d 423 (1977), the trial court refused to grant a recess to allow an absent witness the opportunity to testify. The trial court did not want any delay because only four days had been scheduled for the trial and numerous other cases were waiting to be tried. This court held that "[a] trial court has the inherent authority to control its

docket to eliminate procrastination and delay in order to expedite the orderly flow of business, but the power is not absolute and should be exercised with sound discretion." Based upon the facts of the case, this court found the trial court's refusal to delay the trial an abuse of discretion.

In *Callan v. Biermann*, 194 Kan. 219, Syl. ¶ 1, 398 P.2d 355 (1965), and *Boucher v. Roberts*, 187 Kan. 675, Syl. ¶ 3, 359 P.2d 830 (1961), this court held:

"Each party has the absolute right to have his cause argued by counsel before the decision is rendered, whether it is tried to the court or a jury. However, in order to predicate error upon the refusal of the court to allow argument, it must appear that counsel has not waived the right by silence or acquiescence. The record. should affirmatively show that permission to argue was refused."

Dillner does not demonstrate the applicability of these cases to her argument. These cases are easily distinguishable. They are basically abuse of discretion cases. Here, we have a constitutional challenge to a statute authorizing an expedited judicial hearing that does not provide for a de novo trial by the trial court. These cases provide no guidance for the question at hand.

Dillner's specific allegations of unconstitutionality are that the trial court's delegation of power to an AHO to hear child support modification motions without providing for a de novo trial at the trial court level is a violation of remedy by due course of law, due process, and equal protection. Dillner's constitutional challenge must be viewed in light of the following principles:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution."

"A statute is not to be invalidated by the judicial arm of government if the challenged statute does not contravene significant constitutional or inherent rights of individuals, the classification on which it is based is reasonable, it is within the scope of the police powers of the State, and it is appropriately related to the proper purpose of such police power." *State v. Risjord*, 249 Kan. 497, Syl. ¶¶ 1, 2, 819 P.2d 638 (1991).

Section 18 of the Kansas Constitution Bill of Rights provides for remedy by due course of law:

"All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

"Remedy by due course of law," as used in § 18 of the Kansas Bill of Rights, means the reparation for injury ordered by a tribunal having jurisdiction in due course of procedure after a fair hearing. *Harrison v. Long*, 241 Kan. 174, 179, 734 P.2d 1155 (1987). Remedy by due course of law is tied to due process concerns.

"Over the years, the court has allowed the legislature to modify remedies when required by public policy. [Citation omitted.] However, . . . the court looks to insure that due process requirements are met and, when a common-law remedy is modified or abolished, an adequate substitute remedy must be provided to replace it." *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 346-47, 757 P.2d 251 (1988).

Dillner does not discuss any of the Kansas cases applying § 18. Instead, she asserts two other states have found that a similar procedure violated their equivalent of remedy by due course of law. See *Eberly v. Eberly*, 489 A.2d 433 (Del. 1985); *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988).

In *Eberly*, the Supreme Court of Delaware concluded "it was an abuse of discretion and a denial of the husband's due process rights to have awarded extended interim alimony to the wife without any evidentiary hearing." 498 A.2d at 436.

This case is easily distinguishable from the case at hand. *Eberly*, unlike here, involved the trial court ruling upon the wife's motion for interim relief "without any hearing, notice to the husband's counsel, or explanation." 498 A.2d at 438. Here, there was notice and a hearing before the AHO. *Eberly* also did not involve an expedited judicial process before an AHO.

In *Drennen*, the Supreme Court of Nebraska held that the Referee Act violated the remedy by due course of law provision of the state constitution. The Act stated that the child support referee in certain cases "shall" decide, among other things, all child support modification matters. The court reasoned:

"The Legislature may not limit the constitutionally granted original jurisdiction of the district court. . . .

"The grant of exclusive and original jurisdiction to the referee denies the persons chargeable with potential or delinquent child support obligations access to the district court as an original trier of fact." 229 Neb. at 216.

Although there are similarities between *Drennen* and the case at hand, there also are differences. For example, the Nebraska Ref-

eree Act differs from the expedited judicial process statute in Kansas. The Kansas statute is simply the enabling legislation; the procedures have been established by the Supreme Court and local rules. Furthermore, if the system currently in place in a district is effective, the district may not be required to establish an expedited process. See Supreme Court Rule 172(a). The Nebraska Act required the referee to determine all motions to modify child support. The Kansas procedure does not require an AHO or a court trustee to hear all child support modification matters. District, associate, and magistrate judges also may serve as hearing officers. Supreme Court Rule 172(c). *Drennan* is thus distinguished from the case at hand.

Dillner also alleges a due process violation. The Fourteenth Amendment of the United States Constitution prohibits a state from depriving "any person of life, liberty, or property, without due process of law." In addressing due process concerns, this court has held:

"Basic elements of procedural due process of law are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. [Citation omitted.]" *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, 467, 807 P.2d 652 (1991).

"The test for whether due process has been afforded is whether the legislation has a real and substantial relation to the objective sought, whether it is reasonable in relation to the subject, and whether it was adopted in the interest of the community." *State ex rel. Stephan v. Smith*, 242 Kan. 336, Syl. ¶ 10, 747 P.2d 816 (1987).

" '[T]he . . . Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be "the equivalent of denying them an opportunity to be heard upon their claimed right[s]." [Citation omitted.]' " *Harrison v. Long*, 241 Kan. at 179.

Dillner contends that she has been denied due process because the expedited judicial process in Shawnee County does not provide for a de novo trial at the trial court level. She claims she was denied the "opportunity to be heard before a judge with a right to call witnesses and introduce evidence at meaningful times and in a meaningful manner and to cross-examine opposing witnesses, all with a record for appeal." Dillner does not allege a problem with the notice given. Again, Dillner cites numerous cases from other jurisdictions, which can be distinguished from

the instant case. See, *e.g., Jordan v. Jordan*, 653 S.W.2d 356, 358 (Tex. App. 1983) (divorce procedure, which did not allow parties to call witnesses, violated due process).

Soden responds that neither party was denied due process. Both parties had the right to be heard before the AHO, to call and cross-examine witnesses, and to introduce evidence. Soden states that neither party requested a record of the proceeding before the AHO. Soden contends Dillner did not attempt to present the testimony of Soden's boss during the AHO proceeding; she waited until petitioning the trial court for judicial review.

"The concept of due process is flexible in that 'not all situations calling for procedural safeguards call for the same kind of procedure.' " *In re Petition of City of Overland Park for Annexation of Land*, 241 Kan. 365, 370, 736 P.2d 923 (1987); see *Darling v. Kansas Water Office*, 245 Kan. 45, 50, 774 P.2d 941 (1989). The due process protections offered in an expedited judicial process and other court proceedings may differ. That does not mean the expedited judicial process inherently violates due process.

Dillner claims she was denied due process because she was denied a de novo trial at the trial court level. She does not claim she was denied the opportunity for a full and meaningful hearing before the AHO. There is nothing in K.S.A. 1991 Supp. 20-164, Supreme Court 172, or Shawnee County's local rules restricting the number of witnesses or the type of evidence that can be presented to the AHO. Although Shawnee County's Family Law Guidelines suggest hearings before the AHO usually will last one-half hour, the guidelines state that a party anticipating a longer hearing should notify the Trustee's Office in advance. Hearings can and do last more than one-half hour. The guidelines are not court rules and are not binding upon the court. Furthermore, the AHO's notes for this hearing include a reference to "an extensive hearing" and "2 depositions and *numerous* submitted documents."

What Dillner wanted was a second chance to try her case. She was not denied due process. She received notice, a reasonable hearing, and judicial review.

Dillner's equal protection argument is that, unlike other counties in Kansas, Shawnee County does not provide for a hearing on the record. Dillner's premise for arguing that she was denied

a hearing is that she was denied a de novo trial at the trial court level. Her premise is faulty—she had a hearing before the AHO.

The hearing before the AHO, however, was not on the record. There was no official court recording or reporting of the hearing taken. Soden claims, and Dillner does not dispute, that Dillner never raised the issue of an official court transcription of the hearing to the AHO or to the trial court.

Having concluded that the expedited judicial procedure challenged by Dillner is constitutional, we hold that judicial review on the record is required. It thus follows that either an electronic or court reporter record must be requested at the hearing or the right to object to the lack of a record being made is waived.

Here, Dillner cannot show prejudice because the testimony before the AHO was by deposition and exhibits, all of which were available to the trial court. The only evidence that Dillner did not get before the trial court was testimony of Soden's boss, which the trial court considered irrelevant. The witness' testimony was not offered in the hearing before the AHO; thus, it was not part of the record. The trial court did not err in refusing to hear testimony that could have been presented to the AHO.

Dillner also maintains the expedited judicial process, as conducted in Shawnee County, fails to meet federal mandates required by Title IV of the Social Security Act, which concerns grants to states for aid and services to needy families with children and for child welfare services. 42 U.S.C. § 666(a)(2) (1988) requires states to establish expedited processes to obtain and enforce child support orders. Expedited processes are defined as "administrative or expedited judicial processes or both which increases effectiveness . . . and under which the presiding officer is not a judge of the court." 45 C.F.R. § 303.101(a) (1991). The federal government requires that the expedited processes safeguard the due process rights of the parties and ensure the opportunity for judicial review according to the state's procedures. 45 C.F.R. § 303.101(c)(2), (6) (1991). The presiding officer takes testimony and establishes a record. 45 C.F.R. § 303.101(d)(1) (1991).

Dillner contends that taking testimony and establishing a record mean the hearing must be a hearing on the record. Dillner's

support for this contention is a secondary authority, not the federal government.

Dillner also cites several other states in which a de novo trial at the trial court level is provided for statutorily in expedited judicial processes.

The expedited judicial process in Kansas does not contravene the federal requirements and guidelines. Because there is no conflict between federal law and the expedited judicial process, Dillner's argument fails.

Dillner's final argument is that the trial court erred in affirming the reduction of Soden's child support obligation.

The standard of review for a trial court's affirmance of an AHO's order reducing child support is the same as the standard of review for a trial court's modification of child support: abuse of discretion. See *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, 809 P.2d 1251 (1991) (citing *Thompson v. Thompson*, 205 Kan. 630, 631, 470 P.2d 787 [1970]). " 'Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.' *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973)." 15 Kan. App. 2d at 505.

The trial court's letter decision stated the court considered the record and the arguments made at the hearing on the petition for judicial review. The record included depositions, numerous domestic relations affidavits, child support worksheets, tax returns, financial records, employment earning statements, and medical records. The court affirmed the AHO order except for the effective date of the order.

The AHO estimated Soden's average monthly gross income at $3,000 and imputed Dillner's average monthly gross income at $700. The AHO noted that Soden was dropping from a 72-hour work week to a 40-hour work week, drastically decreasing his salary and that Dillner was unable to do secretarial work because of carpal tunnel syndrome. Mention is made of one child with orthodontic braces.

Dillner contends the trial court abused its discretion by ignoring evidence of the circumstances of the divorce, of the circumstances surrounding the parties' entering into the property

agreement, and of Soden's history of working 72 hours per week to provide for his family. She maintains the trial court abused its discretion by relying solely upon Soden's current income and in finding Soden's motives in reducing his number of work hours were irrelevant.

Additionally, Dillner claims she would not have entered into the property agreement if she had not thought its provisions, including child support, were final. She fails to consider that child support provisions included in a property or settlement agreement are not binding. See K.S.A. 1991 Supp. 60-1610(b)(3). Child support orders "may be reopened, changed, or modified as the children grow and their needs change, the economy changes, the parents move, remarry, change jobs, change their way of life, succeed, and fail." *Hill v. Hill*, 228 Kan. 680, 685, 620 P.2d 1114 (1980).

Dillner argues that Soden should not be able to be deliberately "underemployed with impunity, regardless of motivation." Dillner's premise is faulty. Soden is not underemployed. He reduced his work week from 72 hours to 40 hours. Soden raises the question of whether Dillner is underemployed, working 20 hours a week during the school year. The AHO considered the parties' salaries and the number of hours worked each week. This information was in the record before the trial court. In its letter decision, the trial court stated:

"The Shawnee County Family Law Guidelines provide 'When calculating domestic gross income for a salaried person, the salary figure to be used is the current salary being paid.' The previous year's income should only be used if the income fluctuates and it is necessary to approximate an income figure.' [Citation omitted.] In the usual case a wage earner[']s current earnings are the best gauge of future earnings. In this case the petitioner worked two jobs and overtime. He has decided to quit working more than a 40 hour week.

"The Court does not feel that it is particularly relevant whether this decision is due to personal or medical reasons. The Court is not inclined to order a parent to work more than a normal 40 hour week unless it is necessary to make adequate provision for the needs of the minor children. While earnings from all sources are to be considered when setting child support, the Court is unaware of any guideline, statute or case law which supports the proposition that the parents should be ordered to work more than 40 hours per week when an adequate support order can be made out of the base salary. Under the guidelines, the parental child support obligation

of [Soden] is $910.00 for his three children . . . ". This is in excess of $300.00 per child and, in addition, [Soden] was ordered to pay 81% of the children's uninsured medical care. While [Dillner] and the children would surely enjoy more, this is not an inadequate level of support. [Soden's] standard of living will also decline."

Dillner maintains that both parents should be heard in a motion to modify child support. Both parents were present, and represented by counsel, at the hearing before the AHO and at the hearing on the petition for judicial review. Both parents were heard.

The trial court did not abuse its discretion.

Soden files a timely cross-appeal, contending the AHO erred in accepting as evidence Dillner's exhibits that had not been provided to Soden prior to the hearing, which Soden maintains is contrary to Shawnee County Guidelines, and the parties' depositions. Soden does not brief the issue. "An issue not briefed or argued upon appeal is deemed abandoned." *State v. Smith*, 245 Kan. 381, Syl. ¶ 6, 781 P.2d 666 (1989). Therefore, this court will not address the issue.

Both parties request attorney fees on appeal. Dillner's appeal is far from frivolous. Having the authority to assess attorney fees, this court has considered the motions filed by both attorneys and has concluded that each party should pay his or her own attorney fees.

Affirmed.