No. 68,047

DONALD F. PETERSON, *Appellant,* v. GARVEY ELEVATORS, INC., NATIONAL UNION FIRE INSURANCE, and KANSAS WORKERS' COMPENSATION FUND, *Appellees.*

(850 P.2d 893)

Opinion filed April 16, 1993.

*Thomas C. Boone,* of Law Offices of Thomas C. Boone, of Hays, argued the cause and was on the brief for appellant.

*Lisa J. Lewis,* of Turner and Boisseau, Chartered, of Great Bend, argued the cause and was on the brief for appellees Garvey Elevators and National Union Fire Insurance.

*Jerry Moran,* of Jeter & Moran, of Hays, was on the brief for appellee Kansas Workers Compensation Fund.

The opinion of the court was delivered by

ABBOTT, J.: Donald F. Peterson, the claimant, appeals the trial court's order denying his motion to modify a lump sum settlement in a workers compensation case.

The lump sum settlement was approved by an administrative law judge in 1984. In 1991, Peterson filed a motion, citing what is now K.S.A. 1992 Supp. 44-528, to modify the lump sum settlement. He alleged fraud, undue influence, and misconduct on the part of the employer and his former attorney in failing to inform the administrative law judge fully of his traumatic epilepsy condition.

The facts leading to the motion to modify are as follows. Peterson began working for Garvey Elevators, Inc., the respondent, in 1978. While taking corn out of a bin on January 15, 1983, he injured his lower back. Peterson returned to work in May and, about a week later on May 23, 1983, he fell off a fertilizer spreader and broke his collarbone, reinjured his back, and suffered a head injury. When he fell, he struck the right side of his face and head. Peterson was unconscious for a short period of time and sustained a concussion. In June 1983, he suffered a grand mal seizure. He has had subsequent seizures (as many as 12 or 15 times a month). He refers to his condition as traumatic neurosis epilepsy.

The parties agreed workers compensation covered Peterson's injuries. On November 14, 1984, an administrative law judge (ALJ) conducted a friendly settlement hearing. Present at the hearing were Peterson and his then attorney; the attorney for Garvey Elevators and National Union Fire Insurance, the insurance carrier; and the attorney for the Workers Compensation

Fund. Garvey Elevators and National Union Fire Insurance will be referred to collectively as Garvey Elevators.

Peterson testified at the hearing. He acknowledged discussing the settlement with his attorney. He said he understood that he had the right to a full hearing and by proceeding with the friendly settlement hearing he was waiving that right, and that any settlement the ALJ awarded would be "a full, final and complete settlement." Peterson was advised that, under the terms of the settlement, he would not be reimbursed for any medical expenses brought to the insurance carrier's attention after the hearing or expenses incurred after the hearing. Peterson testified that he "sustained a head injury, . . . broken collar bone, and reinjured the back" in the second accident and that he had been treated by a doctor and had seen the doctor's medical report. The following exchange then occurred on the record between the attorney for Garvey Elevators and Peterson:

"Q. . . . Now, you also understand that this is a full settlement for all the injuries that you sustained or may have sustained in both these accidents, but we are not paying you on the basis of any traumatic epilepsy or any head injuries. What we are compensating you for here is only for your back injuries.

"A. (Witness indicates, but no audible answer.)

"Q. That doesn't mean that you would later be able to seek compensation for epilepsy or any head injury. It just means that the injuries that we are paying for here are just your back injuries.

"A. Now, back up.

"THE COURT: Wait a minute."

An off-the-record discussion ensued. When the discussion returned to the record, Peterson agreed to the ALJ-approved lump sum settlement award in the amount of $39,896.18. Peterson then, on the record, accepted checks in the full amount of the lump sum settlement "as full, final and complete settlement of any claims" arising out of the workers compensation claim.

Peterson concedes all of the parties to the settlement were aware of his epilepsy and were aware in advance of the settlement hearing that medical experts were of the opinion the epilepsy was related to his fall. Peterson's argument is that not all of the medical reports were furnished to the examiner and that the parties did not fully inform the administrative law judge con-

cerning his condition. He seeks to modify the 1984 settlement to give him lifetime medical benefits.

The correspondence of Peterson's attorney, which is included in the record on appeal, indicates Peterson does not know what medical reports were furnished to the medical examiner and specifically whether the two medical reports he alleges were withheld fraudulently were furnished to the ALJ at the hearing. Peterson maintains he should be allowed to depose all counsel and the ALJ to determine exactly what happened. The respondent maintains the motion to modify was not timely for several reasons.

The ALJ held "K.S.A. 44-528 specifically excludes lump-sum settlements approved by the Director or Administrative Law Judge from being subject to review and modification," and treated it as a motion to set aside the settlement. The ALJ then held that a motion to set aside a settlement must be instituted within one year after the date of the agreement, pursuant to K.S.A. 44-527, and was thus time-barred.

Peterson requested a director's review of the ALJ's order dismissing his motion to modify the 1984 lump sum settlement. The director affirmed the ALJ, reasoning:

"At a settlement hearing the Administrative Law Judge has the duty to determine that the claimant understands his rights under the Workers Compensation Act and that he further understands the consequences of settlement of his claim. In order to make such a determination the Administrative Law Judge conducts an examination of the claimant on the record to confirm that the claimant in fact fully understands his rights and the effect of the settlement. Herein, such a colloquy occurred (during which the epilepsy and head injury were brought to the attention of the special administrative law judge) whereupon the claimant agreed to a full settlement of the claim.

"In *Yocum v. Phillips Petroleum Co.,* 228 Kan. 216, 612 P.2d 649 (1980), the Court held that where it was alleged that a settlement agreement was obtained as a result of fraud, the claimant was required to seek relief under K.S.A. 1978 Supp. 44-528 and such statute provided the exclusive remedy to the claimant so as to bar a common law action for fraud against the employer. As noted, the Court was construing K.S.A. 1978 Supp. 44-528.

"K.S.A. 1978 Supp. 44-528 was amended effective July 1, 1979, by the addition of the language 'except lump .sum settlements approved by the director or examiner.' In 1980, 'examiner' was amended to 'administrative law judge.' This amendment exempts lump sum settlements approved by the director or administrative law judge from the statutory provisions for review and modification. Arguably, this has eliminated a statutory remedy for fraud where the lump sum settlement is approved by the director or

administrative law judge and applying the logic of *Yocum*, the claimant may now have the remedy of a common law action for fraud. In any event the amendment specifically excludes lump sum settlements approved by an administrative law judge from the review and modification provisions of K.S.A. 44-528. The Administrative Law Judge correctly determined that a lump sum settlement approved by the director or administrative law judge is not subject to review and modification.

"Assuming that K.S.A. 44-527 is applicable to settlement hearings conducted before an administrative law judge, it is equally clear that the instant proceedings were initiated outside the one year limitation provided by that statute. *Bittnoff v. Southwest Rendering*, 223 Kan. 334, 573 P.2d 1033 (1978)."

At Peterson's request, judicial review followed, and the trial court affirmed the ALJ and the director. This appeal followed.

It is important to understand that in this case Peterson does not claim fraud concerning the cause of his traumatic neurosis epilepsy. Prior to the settlement hearing in 1984, both the claimant and his then attorney knew of the head injury, knew that after the head injury claimant suffered from epilepsy, and knew that medical experts in the field attributed the epilepsy to the trauma suffered when the head injury occurred. In his brief in this appeal, Peterson's current attorney states:

"All of the pre-settlement hearing depositions, medical bills and narrative reports from Drs. Barnett and Colip reflect the fact that this claimant suffered two injuries in January and May of 1983, that is, a low back injury as well as a closed-head injury, the latter resulting in seizures."

On appeal, Peterson's argument is that K.S.A. 1992 Supp. 44-528(a) constitutes unequal protection of the law and denies him due process of law.

Claimant's appeal fails for two reasons. He never raised these constitutional issues in the trial court. "Where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review." *Murphy v. IBP, Inc.*, 240 Kan. 141, Syl. ¶ 3, 727 P.2d 468 (1986).

In any event, his constitutional argument fails. Peterson argues K.S.A. 1992 Supp. 44-528 violates his equal protection and due process rights, guaranteed by § 2 of the Kansas Constitution Bill of Rights and by the Fifth and Fourteenth Amendments to the United States Constitution, because it creates two classes of claimants post-award. He argues K.S.A. 1992 Supp. 44-528 is unequal

in its application; *i.e.*, it permits modification or review of any award *except* lump sum settlements approved by the director or administrative law judge. Peterson also contends other claimants similarly situated are not treated similarly.

Peterson does not explain how the statute violates due process. Peterson does not brief the question. " 'An issue not briefed or argued upon appeal is deemed abandoned.' [Citation omitted.]" *In re Marriage of Soden*, 251 Kan. 225, 239, 834 P.2d 358 (1992). However, in addressing whether K.S.A. 1992 Supp. 44-528(a) violates equal protection, we implicitly will have determined if the statute violates due process.

"The difference between the constitutional concepts of due process and equal protection is that due process emphasizes fairness between the state and the individual dealing with the state, regardless of how other individuals in the same situation are treated, while equal protection emphasizes disparity in treatment by a state between classes of individuals whose situations are arguably indistinguishable. *Ross v. Moffitt*, 417 U.S. 600, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974). The test in determining the constitutionality of a statute under due process or equal protection weighs almost identical factors.

"When a statute is attacked as violative of due process, the test is whether the legislative means selected has a real and substantial relation to the objective sought. This rule has been restated in terms of whether the [statute] is reasonable in relation to its subject and is adopted in the interest of the community. [Citation omitted.]" *Clements v. United States Fidelity & Guaranty Co.*, 243 Kan. 124, 127, 753 P.2d 1274 (1988).

Because the statute is challenged on equal protection grounds, the first question is which standard of scrutiny applies. Peterson neither discusses standards of scrutiny nor suggests a particular standard for this court to apply.

We hold the rational basis test is the proper standard. See *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 779, 830 P.2d 41 (1992) (provision of Workers Compensation Act challenged on equal protection grounds, and rational basis test applied); *Bair v. Peck*, 248 Kan. 824, Syl. ¶ 6, 811 P.2d 1176 (1991) ("Traditionally, the yardstick for measuring equal protection arguments has been the reasonable basis test."); *Leiker v. Gafford*, 245 Kan. 325, 363, 778 P.2d 823 (1989) ("The 'reasonable basis' or 'rational basis' test traditionally has been applied where equal protection challenges have been brought against social and economic legislation.").

"The [rational basis] test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the [rational] basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]

. . . .

"Under the [rational] basis test, it is unnecessary to ascertain the specific purpose the Kansas Legislature espoused, if any, in establishing the challenged classification. Rather, if *any* state of facts reasonably may be conceived to justify the alleged statutory discrimination, the statute will not be set aside as a violation of equal protection. [Citation omitted.]

"A statute comes before the court cloaked in a presumption of constitutionality, and it is the duty of the party attacking the statute to sustain the burden of proof. [Citation omitted.]" *Leiker*, 245 Kan. at 363-64.

See *Stephenson*, 250 Kan. at 774; *Bair*, 248 Kan. at 834; *Farley v. Engelken*, 241 Kan. 663, Syl. ¶ 2, 740 P.2d 1058 (1987).

Equal protection is not violated simply because K.S.A. 1992 Supp. 44-528(a) discriminates between claimants and respondents who enter into lump sum settlements approved by an ALJ or the director and those who do not. The question is whether this classification bears a rational relationship to a legitimate state objective. There is no statutorily stated purpose for precluding such settlements from review or modification; however, the classification will be upheld if any state of facts reasonably may be conceived to justify it.

Garvey Elevators suggests the need for finality and certainty in lump sum settlement awards for both claimants and respondents justifies the classification. Although we need not ascertain the legislature's purpose in creating the classification, Garvey Elevators directs our attention to K.S.A. 44-531 as evidence of the legislature's recognition of the need for finality and certainty in lump sum settlements. K.S.A. 44-531 authorizes the lump sum payment of awards. Garvey Elevators maintains that, if lump sum settlements are subject to review or modification, an employer could be subject to further liability in direct contradiction to K.S.A. 44-531(a), which expressly releases the employer from all further liability upon payment of the lump sum settlement. According to Garvey Elevators, subjecting lump sum settlements to review or modification will defeat the advantages of lump sum

settlements for both respondents and claimants. For respondents, the advantage is an eight percent discount on the total amount of the award if paid by lump sum, pursuant to K.S.A. 44-531(a). For claimants, the advantages include avoiding protracted litigation and receiving the entire amount of the award in one payment. Garvey Elevators suggests receiving lump sum payments will enable claimants to do more with the awards than if they received the money in smaller amounts over a period of time, particularly with regard to rehabilitation and to seeking new employment.

Garvey Elevators claims that although K.S.A. 1992 Supp. 44-528(a) discriminates against parties who settle their workers compensation cases by lump sum settlements, the discrimination is not invidious. See *Baker v. List and Clark Construction Co.*, 222 Kan. 127, 130, 563 P.2d 431 (1977) ("[I]t is only invidious discrimination with no rational basis for the statutory classification that offends the equal protection guarantee."). There is no invidious discrimination because the parties knowingly place themselves within a classification restricting future rights. Before a workers compensation case can be settled by lump sum settlement, all parties must agree to it. K.S.A. 44-531(a).

Finality and certainty in lump sum settlements is a legitimate state objective and justifies excluding lump sum settlements approved by an ALJ or the director from review or modification. Thus, this classification bears a rational relationship to a legitimate state objective.

Peterson also argues other claimants similarly situated are not similarly treated. According to his interpretation of K.S.A. 1992 Supp. 44-528(a), the statute allows review or modification of nonlump sum settlements paid in full. He claims lump sum settlements and nonlump sum settlements paid in full are "the same animal."·

The important factor in denying review is the statutory exclusion confined to "lump sum settlements approved by the director or administrative law judge." Any lump sum settlement not so approved is subject to review, whether it is "the same animal" or distinguishable. Thus, the claimants are not similarly situated.

K.S.A. 1992 Supp. 44-528(a) does not violate equal protection or due process and is constitutional.

Affirmed.